GEO. W. GEORGE, Respondent, v. WABASH WESTERN
RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, March 31, 1890.

*Rehearing denied, April 14, 1890.*

1. **Practice:** DEMURRER TO EVIDENCE. On a demurrer to the evidence the court must indulge every inference of fact in favor of the party offering the evidence, which a jury might indulge with any degree of propriety, and though, on a review of the evidence in this case, it may be found in some respects scant, there is not such total absence thereof as authorizes the withdrawal of the case from the jury.

2. **Railroads:** CHANGE OF ROADBED : FLOW OF WATERS OF STREAM. A railway company, after having constructed its roadbed, has the right to make such changes therein, as experience may designate as proper, and this is a ·continuous right, but it cannot at pleasure make an improvement in its roadbed, which will interfere with the flow of the waters of a stream without reference to the rights of others.

3. **Nuisance :** FORECLOSURE PURCHASER LIABLE FOR RECEIVER'S ACTS. A purchaser of a railroad at a foreclosure sale, who had no direct agency in the act complained of, will not ordinarily be liable for an act of the receivers operating the road prior to the sale ; but if the act of the receivers created a nuisance, which was in existence at the time of the purchase, and the purchaser then had notice of the acts constituting the nuisance and continued the nuisance afterwards, and in consequence thereof plaintiff's land was overflowed, rendered untillable and his crops injured, the purchaser is liable.

4. **Definitions:** NUISANCE. A nuisance, in legal phraseology, is a term applied to that class of wrongs that arise from the unreasonable, unwarrantable or unlawful use by a person of his property, real or personal. Every enjoyment by him of his own property, which violates the rights of another, is in an essential degree a nuisance.

5. **Nuisance:** FLOODING LAND: A CONTINUING ONE : NOTICE. The making an excavation under a railroad track, and removing the original earth thereat and thereby diverting the waters of a creek

George v. The Wabash Western Ry. Co.

from its former channel and emptying them upon land theretofore dry and tillable, where said waters did not before run or flow, constitute a nuisance, and the maintenance of said excavation and its results is a continuing nuisance.

6. ———: NOTICE : PURCHASER : PRINCIPAL AND AGENT. Written notice of the existence of a nuisance served upon the chief engineer of the former railway company cannot impart notice to a corporation (not then in existence) that subsequently purchased the railway at foreclosure sale ; but where such officer is retained in the service of the receivers, and, while so retained, acquired full knowledge of all the facts constituting the nuisance, and the continuation thereof, and is continued in the office in the service of the subsequent purchasers under such conditions as necessarily give rise to the inference that such knowledge remained fixed in his memory, when his employment by the purchaser began, then his knowledge must be deemed the knowledge of the purchaser.

7. Instructions : PLEADING : ISSUES. An instruction that hypothecates facts not averred in the pleadings, or enlarges the issues, or which speaks of the acts of the servants of "said railway" without reference to what corporation was meant, or that confuses and misleads the jury as to issues it was to try, is fatally erroneous.

*Appeal from the Clay Circuit Court.*—HON. JOHN T. CHANDLER, Special Judge.

REVERSED AND REMANDED.

*Geo. S. Grover,* for the appellant.

(1) As the water complained of was merely such as overflowed from the creek in time of freshets, neither its obstruction nor diversion constituted a cause of action. *Abbott v. Railroad,* 83 Mo. 271 ; *Jones v. Railroad,* 84 Mo. 151 ; *Moss v. Railroad,* 85 Mo. 86 ; *Jones v. Railroad,* 18 Mo. App. 25. (2) Any recovery, on account of the diversion of the channel in 1868, is barred by the statute of limitations. *James v. City of Kansas,* 83 Mo. 567 ; *Bird v. Railroad,* 30 Mo. App. 365. (3) As trestle 604 was constructed by the receivers, the appellant cannot be held responsible therefor. *Turner v.*

*Railroad,* 74 Mo. 602 ; *Heath v. Railroad,* 83 Mo. 617 ; High on Receivers, sec. 396 ; High on Receivers [ 2. Ed.] p. 349 ; Beach on Receivers, sec. 721, and cases cited. (4) The appellant, being a subsequent purchaser, was not liable to the respondent for the nuisance, if such it was, erected or maintained by its predecessor in title, without notice or knowledge of the existence of such nuisance, and a reasonable opportunity thereafter in which to abate it. *Pinney v. Berry,* 61 Mo. 359 ; *Dickson v. Railroad,* 71 Mo. 575 ; *Wayland v. Railroad,* 75 Mo. 548. ( 5 ) The instructions given at the request of respondent, and by the court of its motion were clearly erroneous. Authorities cited, *supra.* (6) The verdict should have been set aside as in conflict with the instructions given by the court in behalf of appellant. *Way v. Railroad,* 73 Iowa, 463 ; 34 Am. & Eng. R. R. Cases, p. 286.

*H. F. Simrall* and *Samuel Hardwicke,* for the respondent.

(1) "The water complained of was merely such as overflowed from the creek in time of freshets," etc. There might be something in this, if it had any foundation in fact. The testimony was that the entire creek was turned in. That issue was submitted to the jury, by instructions, and under the evidence they found that way ; and defendant's instruction was on that point and was given. (2) "Any recovery, on account of the diversion of the channel in 1868, is barred by the statute of limitations." So the court instructed, at their instance, except the statute of limitations was not mentioned. No damages were asked on account of the act of 1868. The fact was stated by way of inducement. (3) "As trestle number 604 was constructed by the receivers, the appellant cannot be held responsible therefor." No attempt is made to hold them responsible therefor. The receivers, by constructing

trestle 604 and excavating the bank and original earth under it, turned the waters of Rush creek from its channel and emptied them on the lands of respondent, where there was no channel to carry the waters off, thereby creating a damaging nuisance; "and," the petition says, "defendant wilfully, and with full knowledge and notice of the facts causing said additional nuisance, continued and maintained said additional nuisance during the summer and autumn of 1887, so that Rush creek, during said summer and autumn of 1887, emptied upon the lands of plaintiff and overflowed the same, during said summer and autumn of 1887." As a result, "his crops on his said premises, for the year 1887, were totally destroyed and his land rendered untillable for said year, to plaintiff's damage," etc. This is what the suit is for—damages done by appellant during the year 1887; for the act which defendant did, because defendant "continued and maintained said additional nuisance," etc. (4) "Not liable"—"for the nuisance"—"without notice or knowledge of the existence of such nuisance and a reasonable opportunity"—"to abate it." We think the question of "knowledge," which is all that is required (*Wayland v. Railroad,* 75 Mo. 548), is pretty well settled. Officers who were in charge of the road when the receivers did that thing were in charge under the new name. Mr. Talmage, one of the engineers, who came up first to try to adjust matters, was also a witness in both courts; and Mr. McGuigan was connected with the road all the time. As to "opportunity to abate" the nuisance, they had all summer in which to do it, and they can get a very liberal compromise now, or at any future time, if they will do it.

SMITH, P. J.—This was an action commenced by the plaintiff against the defendant, in the circuit court of Clay county, for the recovery of damages. The

George v. The Wabash Western Ry. Co.

petition, owing to its great length, and the many super-
fluous and redundant allegations it contained, cannot
be set forth here. It alleged that, in the year 1868, the
North Missouri Railway Company, in the construction
of its roadway, through Clay county, wrongfully erected
an embankment across Rush creek, at two different
points, so that the current thereof was diverted from
its usual course, and directed and driven along the
north side of the roadbed of said railway from the
western to the eastern point of obstruction, where it
was restored to its original channel; and where it was
driven against the bank of its original channel at right
angles, and said bank, not being protected in any
manner against an increase in the volume of water, and
its accelerated velocity, it rushed across said original
channel at the last-named point, and cut a new channel,
for about a half a mile further east, along said railroad,
where it again reached its original channel; that in
1872 the St. Louis, Kansas City & Northern Railway
Company succeeded the said North Missouri Railroad
Company in the ownership of the said railroad; that in
1880 the St. Louis, Kansas City & Northern Railway
Company was consolidated with the Toledo, Wabash &
Western Railroad Company under the name of the
Wabash, St. Louis & Pacific Railway Company; that
in 1874 the property, etc., of said last-named railway
company was taken possession of by receivers, under
an order of the circuit court of the United States; that
the said receivers, while controlling and operating said
railroad, wrongfully and unnecessarily removed the
embankment of its railway, and excavated below the
original surface of the ground, at a point on said stream
where it had cut, for itself, a new channel, as aforesaid,
and constructed, in lieu thereof, a trestle about one
hundred and fifty feet long, and thus wrongfully turned
the waters of the stream from said channel, from the
north side of said railroad, under said trestle, to

the south side thereof, upon the lands of the plaintiff, where the waters of said stream never ran before, and where the stream had no outlet whatever, and where a lake was formed, covering some three hundred acres of land; that, on the first day of April, 1887, the defendant became the owner of said railroad property, continued and maintained said nuisance, knowingly and wilfully, and with full notice and knowledge of all the facts causing the same; that the defendant so continued and maintained said nuisance during the year of 1887, so that said stream, during the summer and autumn of that year, overflowed the lands of plaintiff, which were formerly dry lands, and not subject to overflow, by reason of which overflow his crops were totally destroyed and his land rendered untenable, for said year, etc. The answer was a general denial, and the plea of the statute of limitations. The evidence introduced at the trial tended, to some extent, to sustain the material allegations of the petition.

It is quite voluminous, and no further statement of it need be made, beyond the references that will be made to it when we come to consider the instructions. At the conclusion of the plaintiff's evidence, the defendant interposed a demurrer thereto, which was by the court overruled. The defendant offered no evidence. The court instructed the jury, at the instance of the plaintiff, as follows:

"The court instructs the jury that a water course is a stream usually flowing in a particular direction, though it need not flow continuously. It must flow in a definite channel, having a bed, sides or banks, and usually discharges itself in some other stream or body of water.

"If the jury believe from the evidence that Rush creek is a running stream of water, and that the waters of said stream were, in the year 1885, running in a channel on the north side of what is now the Wabash

Western railroad, at a point where is now a trestle called ,trestle 604, and that Solon M. Humphreys and Thomas E. Tutt, as receivers, were in possession of, and operating, said railroad at said time, and that, during the year 1885, said Solon M. Humphreys and Thomas E. Tutt, while operating said railroad, made an excavation under said railroad track at a point which is now called trestle 604, and removed the original earth at said point, and thereby caused the waters of said Rush creek to be diverted from its former channel, and emptied the waters of said creek on the lands of plaintiff, and that said stream did not run or empty on said lands of plaintiff before that time, and that said stream did run on and over the said lands because of said acts, and that before that time said lands were dry bottom lands, susceptible of cultivation, and if the jury believe from the evidence that defendant obtained title to said railroad as successors of said Tutt and Humphreys, and that the defendant had knowledge or notice of said acts done by said Tutt and Humphreys, and that, during the year 1887, after the first day of April of said year, defendant continued to keep said excavation open, and thereby caused the lands of plaintiff to be overflowed during said period of said year 1887, so that plaintiff's lands were made untillable, and his crops injured or destroyed because of said change in the course of said stream, then the jury will find for the plaintiff, and assess the damages at any sum the jury may believe the plaintiff to have been damaged, not to exceed the amount claimed in the petition.

"If the jury find for the plaintiff, they will assess his damages in such sum as the rental value of said lands as were rendered wholly untillable, and the market value of such crops as were destroyed at the time they were destroyed."

The court, at the instance of defendant, gave these instructions:

"The court instructs the jury that the plaintiff is not entitled to recover of the defendant on account of any injury which he may have sustained by reason of the construction of embankments across the channel of Rush creek, and the construction of the artificial channel in lieu thereof, by the North Missouri Railroad Company in the year 1868.

"The court instructs the jury that the plaintiff is not entitled to recover of this defendant any damages which he may have sustained by reason of the embankment of the railway being removed, and a trestle substituted instead by Humphreys and Tutt, if the jury further believe from the evidence that damages so sustained by plaintiff were occasioned by the waters of Rush creek having overflowed its banks, and having found its way to the defendant's said embankment, and there standing against it and spreading out over the adjacent low or depressed land.

"The court instructs the jury that the railroad company had the right, if it thought necessary to do so, to open the embankment at any place it was proper to do for the purpose of letting through any water which flowed, or would flow, against said embankment out of Rush creek.

"If the jury believe from the evidence that the waters of Rush creek, in times of freshet, mounted its bank, and made its way down to the right of way of the railroad, and then followed along the railroad in depressions made by the removal of dirt in the construction of the embankment, and that the waters of the creek became accustomed so to flow along the railroad, and then spread out over the low lands adjoining, and that it was accustomed to run against the railroad embankment or upon its right of way, and that the railroad company opened its embankment, and that the said water then flowed through said embankment onto the plaintiff's land, then the plaintiff is not entitled to recover.

"The jury are instructed that the railroad company was not bound to maintain an embankment so as to protect plaintiff against the water flowing thereon.

"The court instructs the jury that if they believe from the evidence that the water by which the plaintiff was injured was the superabundant water from Rush creek, which, in times of freshet, ran along the ditch, or excavation, on the north side of the railroad, and thence through the trestle on the railroad onto plaintiff, and that such waters, after coming out of the old and ancient channel of Rush creek, and onto the north side of the right of way of the railroad, had no well-defined channel back to the ancient channel of Rush creek, that then said water was surface water, and the plaintiff is not entitled to recover in this case."

The court upon its motion gave this instruction:

"If the jury believe from the evidence that the water along the north side of the railroad bed near plaintiff's land was a well-defined stream and that defendant excavated the natural earth across its roadbed from said stream so as to change its course, and that such change caused the damage complained of by plaintiff, then they will find for plaintiff; but if they further believe that the damage so done was the result of water overflowing said banks, they will find for defendant."

The verdict of the jury was for the plaintiff, and, after an unsuccessful motion for a new trial, judgment was rendered for the plaintiff, from which defendant appealed.

I. The first ground, upon which defendant by his appeal assails the judgment, is, that the trial court erred in overruling its demurrer to the evidence. If we apply to the evidence of the plaintiff in this case the oftentimes quoted rule, "that on a demurrer to the evidence the court must indulge every inference of fact in favor of the party offering it, which a jury might

indulge with any degree of propriety" to the evidence we, must regard with disfavor this ground of defendant's assault. We cannot say that there was no evidence adduced by the plaintiff, which authorized the court to let the case go to the jury. It is true, that, in some respects, it was quite scant, but, still, there was not that total absence of evidence which authorized the withdrawal of the case, from the consideration of the triers of the fact. There was some evidence that Rush creek was a stream within legal contemplation, and that its waters which damaged the plaintiff from time to time were diverted from the accustomed channel of said creek, by the act of the receivers, in the excavation and removal of a section of the embankment, upon which the track of said railroad was situated, and thus providing a way for it to leave its accustomed channel, and pass under said railway track, and out, and upon the plaintiff's land which had previously been dry and tillable. The embankment of the railroad, at the point where it was opened by the receivers, had been, for nearly eighteen years, a barrier—a bank which restrained the waters of said creek within its accustomed channel, and from flowing south, at that point, in times of freshets, and from this fact, taken in connection with the further fact, that there existed no seeming necessity for making said opening in said embankment, or all circumstances that constituted an interference with the waters of said creek, which take the case out of the operation of the rule, for which defendant contends, laid down in *Moss v. Railroad*, 85 Mo. 86, and the other kindred cases cited by defendant, it would seem that while the making of the opening or trestle in question was an improvement, yet under the circumstances, to make it, was in contravention of the maxim, "Use your own property so as not to injure another."

It cannot be denied that a railway company, after having constructed its roadbed, has the right, subject to

the limitations of the maxim just quoted, to make such changes therein, as experience may designate as proper, and that this is a continuous one, but the idea is not to be tolerated, that it can at pleasure make an improvement in its roadbed, which will interfere with the flow of the waters of a stream, without reference to the rights of others. Here, the evidence shows, that the receivers not only removed the embankment down to a level with the surface of the ground, but that they cut a ditch through the opening so made, to the depth of about two feet, so as to make the same equal to the depth of the bed of the creek, with which it connected. It is believed that upon no principle of law can the right of railway roadbed improvement be so far extended as to justify this. But whether the evidence was to the effect that has been stated by us, may be questioned, but that there was some evidence, the tendency of which was in that direction, we think is incontrovertible.

II. The defendant's further contention is, that it cannot be held responsible for the construction of the opening or trestle in its roadbed, of which complaint has been made. Necessarily involved in this contention, is the consideration of the propriety of the action of the trial court, in giving the plaintiff's first instruction. It was admitted by the defendant that the Wabash, St. Louis & Pacific Railway Company was, at the time of the construction of said trestle, the owner of the said railroad, and that it was at that time in the possession of, and operated by, receivers, who had been appointed by the United States circuit court for that purpose. It was further admitted, that such receivers continued in the possession of said railway property until the first day of May, 1887, when the defendant purchased it under a decree of foreclosure of a mortgage thereon. It will be seen, that defendant had no direct agency, whatever, in causing said excavation, in

said roadbed, to be made. It is clear that the defendant would not ordinarily be liable for any act of the receivers while operating the road. *Turner v. Railroad*, 74 Mo. 602 ; *Heath v. Railroad*, 83 Mo. 617. But if the act of the receivers created a nuisance which was in existence at the time the defendant acquired the ownership of said railway property, and it had knowledge or notice of the acts of said receivers which constituted the nuisance, at the time of its acquisition, and continued such nuisance afterwards during the year 1887, and that, in consequence thereof, the plaintiff's lands were overflowed in that year, and his crops injured and his lands render untillable, it is liable.

A nuisance, in legal phraseology, is a term applied to that class of wrongs that arise from the unreasonable, unwarrantable or unlawful use by a person of his property, real or personal. Every enjoyment by him of his own property, which violates the rights of another, is, in an essential degree, a nuisance. Woods' Law of Nuisance, 1, 2. If the facts hypothecated by the plaintiff's first instruction exist, then the act of the receivers, in question, was a nuisance, and, if said change in said creek through the said roadbed was maintained by them, this was continuing the nuisance. This brings us to a more important and different question in the case under this head, which is : "If the nuisance, committed by the receivers, was a continuing one, is the defendant liable therefor, upon any ground of principle ? The instruction told the jury that it was, if they found that it had notice and knowledge thereof, when it succeeded to the ownership and possession of said railway. This was a correct declaration of the law in that respect. *Pinney v. Berry*, 61 Mo. 359 ; *Dickson v. Railroad*, 71 Mo. 575 ; *Wayland v. Railroad*, 75 Mo. 548.

But it is contended, that there was no such notice, and that, therefore, the said instruction must be condemned on that account. It will not be seriously

contended that the notice signed by Mitchell and
others, which was given to the chief engineer of the
Wabash, St. Louis & Pacific Railway Company,
imparted to this defendant, then not in existence, was
any notice of the existence of the nuisance. If there was
any knowledge or notice of the existence of the said
nuisance imparted to defendant, it must be looked for
elsewhere. But, while the defendant had no formal
notice of the existence of the nuisance, did it not have
knowledge thereof, obtained in a different way? Did
no officer, or agent of the defendant, who was an officer
or agent of the receivers, have knowledge of the exist-
ence of the nuisance at the time of the injuries suffered
by the plaintiff? The uncontradicted evidence was to
the effect that Lincoln and Talmage belonged to the
engineering department of the Wabash, St. Louis &
Pacific Railway Company, when said creek was inter-
fered with, by being turned through the said railroad
bed and its waters made to flow upon the plaintiff's
lands. As the act referred to was done by the direction
of said engineers, during the time said railway was in
charge and under the control of the receivers, the infer-
ence of fact, necessarily, is that they were in the employ
of the receivers. McGuigan was then road master of the
division of the road, where the said opening was made
in said railroad bed, after the cut in the roadbed was
made and while the road was in the hands of the receivers,
Talmage, the chief engineer of the road, was notified of
the injurious results of the act, and he went upon the
ground and made an examination of the situation, and
thus acquired a full knowledge of all the facts in rela-
tion thereto.

Now these officers of the railway company, then
owning the railroad, were also the agents of the receiv-
ers, who were then in possession of, and operating it.
These persons were likewise officers of the defendant,
when the wrongs complained of were committed. Was
the knowledge of these officers previously acquired,

while they were in the service of another corporation, and while they were active agents of the receivers, the knowledge of the defendant at the time plaintiff suffered the injury and damage for which he sues? Could defendant have acquired knowledge of the matter complained of in this way? The rule is, that, when at the time of the transaction by one acting in the capacity of agent, the recollection of the fact, with notice of the fact of which it is sought to charge the principal, is present to the mind of the agent *wheresoever*, *howsoever* or *whensoever* the knowledge of such fact was obtained, such knowledge will be the knowledge of the principal, provided it come to the agent in a manner that he might communicate it, or act upon it, without being guilty of a positive violation of duty. Wade on Notice, sec. 687. While not committing ourselves to the unqualified approval of this rule, in all of its broadness, we are of the opinion, that the knowledge, obtained by defendant's officers and agents while they were the officers and agents of the defendant's immediate predecessors, and the receivers, of all the facts and circumstances respecting the acts constituting said nuisance and the continuation thereof, was acquired under such conditions as necessarily give rise to the inference that such knowledge remained fixed in their memory, when their employment by defendant began, and that their knowledge must be deemed the knowledge of defendant. *Chouteau v. Allen*, 70 Mo. 341; Wade on Notice, sec. 688-9. It is, therefore, our conclusion that the defendant had knowledge of the nuisance complained of, and that the part of the plaintiff's first instruction, relating to notice, was not without some evidence to support it.

As to the measure of damages, it may be remarked, that the instruction of the plaintiff, in respect to that matter, might have been more definite and specific, yet as the amount of damages, found by the jury, do not seem excessive we are unable to perceive that the defendant has been in any way injured in consequence

of that. The case was not tried upon the theory of permanent or prospective injury of the plaintiff's land, but upon the theory that the action was for loss sustained, by plaintiff, of the rental value of the land, the destruction of the growing crops for the year 1887, by the continuance of the nuisance. These elements of damages were proper subjects of an instruction to the jury under the petition and evidence. *Pinney v. Berry*, 61 Mo. 359.

And as to the instruction given by the court, upon its own motion, it may be observed, that it was erroneous, in that it told the jury, that if defendant excavated the natural earth across the roadbed from said stream so as to change its course, and that such change caused the damage complained of, then they should find for plaintiff, etc., for these reasons: *First*. It does not correspond with the pleadings, for the facts hypothecated are not averred therein, *i. e.*, that defendant excavated the earth across said railroad bed, etc.; *second*, it enlarges the issues; *third*, the jury may have understood from the language employed that if said change in the said railway roadbed was made by the agents, servants and employes of said railway, without reference to what corporation or office was owning and operating it, that such change was the act of defendant; *fourth*, it was calculated to confuse and mislead the jury as to the issues which it was called upon to try. It was like a guide-board, whose fingers pointed the wrong way. Besides it was irreconcilably in conflict with the other instructions given. Its vice was not and could not be covered by the other instructions. We cannot say that the giving of it was an innocuous error. The instructions, in other respects, are unexceptionable and but for this error of the court in giving its own instruction, we should affirm the judgment of the circuit court.

The judgment is reversed and cause remanded. All concur.