DESBERGER, Respondent, v. UNIVERSITY
HEIGHTS REALTY & DEVELOPMENT
COMPANY, Appellant.

**St. Louis Court of Appeals, May 28, 1907.**

1. **WATERS AND WATERCOURSES: Diverting Channel of River: Nuisances.** Where the owner of a tract of land through which a river flowed, containing filth, offal and sewage, dug a new channel for the river in close proximity to the land of another and diverted the stream therein, so that a large portion of the other's land would become uninhabitable on account of odors from the sewage and on account of the cutting into and encroaching upon such land by the stream, this was a nuisance which could be restrained by injunction.

2. ———: ———: ———: **Laches.** The evidence in such case is examined and held the plaintiff, bringing such an action to restrain the nuisance, was not guilty of such laches as to prevent his recovery.

3. ———: ———: ———. Where the plaintiff sought to restrain the cutting of a ditch for the purpose of diverting the channel of the river in such manner, the action could not be defeated by an offer on the part of the defendant to secure by a wall the bank of the stream so as to prevent the encroachment upon plaintiff's land where it was shown the polluted and unsanitary water in such close proximity to the plaintiff's land was a nuisance.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney*, Judge.

AFFIRMED.

*G. A. Wurdeman* and *Barclay & Fauntleroy* for appellant.

(1)   Plaintiff's land does not touch the river at any point. He has no right whatever as a riparian proprietor; no right to any easement concerning the river. Schlag v. Jones, 131 Pa. St. 62; Lyon v. Fishmongers, 1 App. Cas. (L. R.) 662; Bank v. Asylum (Ky.), 56 S.

W. 525. Even if plaintiff had an easement in the stream as a riparian proprietor (which he admits he does not have) defendant had the right to change the course of the river Des Peres on its own premises by making a new and larger channel therefor. Earl v. Railroad, 10 Ch. Div. 707; Norton v. Valentine, 14 Vt. 239. (2) Defendant is solvent and plaintiff has a complete and adequate remedy at law if there has been any trespass, as defendant denies. R. S. 1899, sec. 3649; Planet Co. v. Railway, 115 Mo. 613; Railroad v. Lowder, 138 Mo. 533. (3) The decree is erroneous in any view, for the trial court had no power or right to forbid defendant to make a new channel for the river (on its own property) within eighty-four feet of plaintiff's line. The bed of the stream is part of the property of defendant. Iron Co. v. Kenyon, 11 Ch. Div. 782; Peck v. Goodberlett, 109 N. Y. 180. (4) Plaintiff was guilty of fatal laches. After notice of defendant's proposed improvement, plaintiff stood by until defendant had incurred large expense toward completing the improvement, when plaintiff attempted this injunction suit. He was too late to come into equity. High on Injunctions (2 Ed.), sec. 797; Baker v. Vanderburg, 99 Mo. 393.

*Thomas P. Bashaw* for respondent.

(1) The making of the ditch complained of by respondent and the filling in of the river Des Peres, thus changing the bed and course of that stream on defendant's premises to within four or five feet of respondent's land would be an injury to respondent. It follows that said change of the bed of said stream is a continuing nuisance, because, "nuisance arises from the unreasonable, unwarrantable, or unlawful use by a person of his property, real or personal. Every enjoyment by him of his own property which violates the rights of another is in an essential degree a nuisance." George v. Railroad, 40 Mo. App. 433; Eaton on Equity, p. 593; Cooley

on Torts (2 Ed.), p. 706; Abbott v. Railroad, 83 Mo. 271; O'Connell v. Railroad, 13 L. R. A. 397; Willetts v. Railroad, 21 L. R. A. 609; Hosher v. Railroad, 60 Mo. 330. (2) It is ancient law that a person must use his own possessions so as not to injure his neighbor and that an injury that results in a permanent nuisance to his neighbor will be restrained by a court of equity. Bank v. Kennett Est., 101 Mo. App. 394; Smith v. Mc-Conathy, 11 Mo. 517; Ellis v. Railroad, 63 Mo. 131; Paddock v. Somes, 102 Mo. 226; State ex rel. v. Board of Health, 16 Mo. App. 108; Holke v. Herman, 87 Mo. App. 125; Cooley on Torts (2 Ed.), p. 706. "And where the conditions imperatively call for it the removal of costly improvements will be ordered." 1 High on Injunctions (3 Ed.), 773; 2 Wood, Nuisance (3 Ed.), 77; Campbell v. Seamen, 63 N. Y. 568, all cited in Dank v. Kennett Est., 101 Mo. App. 395. (3) And the court is not governed by questions of pecuniary value, but will remedy and prevent an injury which it may reasonably be supposed would materially lessen the enjoyment of property by the owner. R. S. 1899, sec. 508; White v. Forbes, Walker (Mich.) 112; Troe v. Larson, 84 Iowa 649; Duesler v. Johnston, 48 N. Y. 683.

BLAND, P. J.—Respondent is the owner of a tract of land containing nineteen acres, situated in St. Louis county, a short distance west of the west boundary line of the city of St. Louis. The tract has a front of seventeen hundred and seventy-three feet and a few inches on the south side of the Olive street road, and extends south on the east line thereof, four hundred and sixty-two feet and on the west line, four hundred and ninety-two feet. Olive street road is improved and is one of the principal thoroughfares into the city of St. Louis from St. Louis county. An electric railway line running from the heart of the city of St. Louis to Creve Coeur Lake, runs over the tract from east to west parallel with and

one hundred and twenty-five feet north of its south boundary line. Appellant owns an eighty-five acre tract which joins the respondent on the south, and which it has sub-divided into building lots, streets and alleys, known as University Heights. Appellant's tract extends about three hundred feet beyond the west line of respondent's tract. The river Des Peres, a well-defined watercourse, enters appellant's tract west of the west side of respondent's tract and passing out on the north, re-enters appellant's tract about one hundred feet west of the southwest corner of respondent's tract, and after diverse meanderings, passes in a southeasterly direction through respondent's land, at a distance varying from eighty-four to three hundred feet south of the south line of respondent's tract. The southern portion of appellant's tract is hilly land, the northern portion, bottom land and subject to overflow from the river Des Peres. For the purpose of improving the low lands and making them fit for building sites, the appellant adopted a plan of improvement requiring the digging of a ditch fifty feet in width and nine feet in depth through its entire tract and along the north boundary thereof and within five feet of the south line of respondent's tract, to provide a new channel for the river Des Peres, intending to fill up the old channel and to raise the grade of its low lands three or four feet. In the spring of 1903, appellant began the excavation of said ditch and expended about $2,800 thereon, when the respondent procured from Judge McElhinney of the St. Louis County Circuit Court, a temporary restraining order, which order, on final hearing, was made perpetual. The first decree rendered by Judge McElhinney was, on motion of appellant, modified, and as modified, reads as follows:

"Now again come the plaintiff, Samuel Desberger, by his attorneys, and the defendant, the University Heights Realty and Development Company by its attor-

neys, and the court having duly considered the defendant's motion heretofore filed for additional bond, it is ordered by the court that said motion be, and it is hereby, overruled; and the court, having also duly considered the defendant's motion to modify the decree herein, it is ordered by the court that said last named motion be sustained in part, as indicated by the modification of said decree hereinafter recited, and that said motion be overruled in other respects, wherefore it is considered, adjudged and decreed that the decree heretofore entered herein be modified so as to read and be as follows, to-wit: Now at this day again come the parties, plaintiff and defendant in this cause, by their respective attorneys, and this cause having been heretofore submitted to the court upon the pleadings, evidence and briefs of counsel, and the court having heard the evidence and having seen and considered the briefs and arguments of counsel, and being now fully advised of and concerning the premises, doth find the issues herein in favor of the plaintiff and against the defendant; and doth find the plaintiff at the time of the institution of this suit was and still is the owner in fee of the following described lot or tract of land, situate in the county of St. Louis and State of Missouri, to-wit: A tract of 19 acres having a front of 1773 feet 9 1-8 inches on the south line of Olive street road, and extending south at the east end of said tract a distance of 462 feet 11 1-4 inches, and at the west end a distance of 492 feet 9 inches, and being in United States survey No. 378, in township 45, north, range 6 east; that plaintiff's said tract of land is generally level and from its location along the Olive street road and the street car line and from its proximity to the city of St. Louis it is adapted principally for sub-division into residence lots, and is valuable for that purpose; that said street car line, operated by the St. Louis Transit Company and with its connection extending to all parts of the city of St. Louis, extends

through said tracts from west to east, its center line being about 157 or 158 feet north of plaintiff's south line leaving about 125 feet between its tracks and said south line; and that this is of sufficient depth for lots along said south line, but leaves no land to spare for waste or use as a sewer for the public or adjoining proprietors.

"And the court doth further find that the defendant at the time of the institution of this suit, owned and still owns a tract of about 85 acres of land adjoining plaintiff on the south; that the southern portion of defendant's tract is high, hilly and considerably broken, that the northern portion is in the river Des Peres bottom and that this creek meanders through said tract in a southeasterly direction, that it is so irregular as to render useless for sub-division or residence purposes a portion of defendant's said bottom land of an average width of 300 feet by 200 feet in length, in its present condition; and as now existing this portion of defendant's land in said bottom is worth considerably less than the worst of plaintiff's land; that defendant's said tract is adapted to sub-division into residence lots and on account of the large amount of high land can be made into a valuable sub-division, by great expense in grading and filling up the low lands with earth taken from the hills.

"And the court doth further find that defendant before the institution of this suit had devised a scheme for sub-dividing its tract into lots for residence purposes and for grading the same; that a part of this plan was to undertake to reclaim its said bottom land from the river Des Peres by filling in the channel of said stream and opening a new and enlarged and straight channel or ditch for it 250 feet on an average, north of where it has been and in five feet of plaintiff's south line and by filling in said bottom land three or four feet higher at the south bank of this new channel, the new grade of the property gradually to rise toward the south, so

that all defendant's property except the new channel
would be greatly improved and rendered available for
sub-division, the river Des Peres to be made the sewer
for this sub-division, the discharge into it to be made
on the east side of the property and at a point at least
seventy-five feet from plaintiff's south line. Said pro-
posed new channel, according to the plans and design
of defendant, is to be fifty feet wide by nine feet deep,
with a smaller channel in the center of the bottom 1 1-2
feet deep by 3 feet wide, which will carry the ordinary
flow of water in the stream. The larger channel will
be sufficient to carry the water in time of floods, with
no danger of overflow to defendant's land, on account of
the elevation by grading; although on this account the
plaintiff's land will probably be exposed to some over-
flow. The walls of this ditch are vertical and consist
of the natural earth, left after excavating the ditch 50
feet wide, without any lateral support on the sides of the
channel. The earth is alluvial or bottom deposit, the
lower portion of which is sandy clay, which splits off in
vertical slabs and undermines the soil which it supports.

"And the court doth further find that the river Des
Peres is an ancient watercourse, with running water
flowing between well defined banks. The average or
typical natural channel is about eight feet deep at the
center with more or less irregular slopes to high banks
50 feet apart, and lower banks between. For nearly all
the year the stream is very small, and at times of great
drought the water stands in pools without flowing at
all in places. In times of freshet the stream is swollen
and overflows its banks and a good deal of the low lands
through which it flows. But overflows occur only two
or three times in a year and last but a few hours. The
volume of water, in the greatest floods, may require a
channel 50 feet wide by from 7 to 9 feet deep, to safely
carry it without overflow. This river has, by common
use of the riparian owners above the place in question,

become an open sewer for the discharge of filth, offal, refuse and dirty water, and as such is offensive and depreciates the property for residence purposes, along and near the same.

"And the court doth further find that at the time of the institution of this suit defendant had begun the making of said new proposed channel or ditch with a design and purpose of diverting all the water of the river Des Peres into the same at a point near the western boundary of plaintiff's said tract of land and continuing the same due east along a straight line having its north vertical wall about nine feet high and in five feet south of plaintiff's south line; and that at said time about 68 per cent of the work of the excavation of said ditch had been completed, as well as a small part of the work of filling the old channel, and that at said time the banks of said new ditch, owing to the nature of the soil and clay, had begun to crumble and fall into the same; that pursuant to consent of the parties to this suit, that the judge might inspect the ditch in controversy to determine the character of the soil and clay through which said ditch runs, the judge made personal inspections thereof on June 6, 1903, in the afternoon, after three or four heavy rains which had occurred on the last day of the trial and thereafter, and saw and observed and ascertained, and the court therefore finds that the earth through which the ditch is being cut is creek or river bottom deposit, black loam at the top for one foot or a little more, becoming a little lighter in color for some two feet or more and then a blackish or brownish yellow clay, containing fine sand, and apparently firm and compact. This clay crumbles and splits off by the action of water washing against it, in slabs of a few inches in thickness and from a few inches to two or three feet in length. The indications were that the water had been from six to eight feet deep in the ditch. On each side, the water had washed out the clay, under-

mining the soil for a few feet in several places, including one long place on each side, to over three feet, and at one or two places, nearly to the line of plaintiff's property; although the soil at the surface, being sustained by roots and sod projected beyond the clay at these places for one or two feet. For much the greater part of the length of the ditch, the water had apparently no appreciable effect upon the bank. At a second inspection, made by said Judge one week later, June 13, there were several more places than formerly observed at which the bank was caved in to some extent. There were at least six of these places on each side, where such caving was quite noticeable. The edges of the bank no longer looked smooth and even, but were rough and irregular. None of these places were very large, except one, on the north side. At this place a large slab, two to two and one-half feet in thickness, five or six feet in depth and twelve or fifteen feet in length, had slipped down some two and one-half or three feet, carrying the sod and soil with it. The sandy condition of the clay, and its tendency to crumble, were more noticeable.

"And the court doth further find that said river Des Peres does not run upon plaintiff's land at any point, being at the nearest point 145 feet south of it, and 600 feet of it being over 200 feet distant, and some 400 or 500 feet being 300 to 600 feet distant from plaintiff's line; that plaintiff's line south of said railroad has suffered overflow in freshets principally at a depression near the west and extending from the river Des Peres and returning to the same across defendant's land, and at a small place at the east end. These overflows are of short duration, but will detract from its value unless they can be prevented by filling up the property or otherwise.

"And the court doth further find that at two or three places the banks of said ditch have already caved in, so that it is at all places unsafe to stand upon the

southern line of plaintiff's property; that this process will continue, by the action of the elements, and plaintiff's land for a distance of several feet north of and adjoining the ditch along the entire length of the ditch, will be washed down, in irregular and uneven lines, so that it is now imprudent for one to erect any permanent fences or other structures upon or next to his said south line, and a considerable portion of his property is now worthless, if the ditch is permitted to remain; and the whole of it will be greatly depreciated in value by being brought in contact with the excavation, as well as by the increased proximity to the open sewer if this ditch is allowed to remain. That the amount of such depreciation is difficult to estimate, and it cannot be definitely ascertained. No doubt, it would be great, including almost the entire destruction of plaintiff's land south of the street railroad for a distance of 1,100 or 1,200 feet and also a great depreciation in the value of the remainder. The remedy by action for damages would be entirely inadequate. The injury will be irreparable.

"And the court doth further find that it is entirely feasible for defendant to construct this sewer in a straight line either open or inclosed, entirely upon its own premises, at the same distance from plaintiff's property as the river Des Peres is now located — 145 or more feet; and that said ditch upon the plan proposed would be a failure at any place in said bottoms; if left to itself, it will not maintain its vertical banks or straight course, but will gradually return to the uneven and irregular sloping banks and meandering course which it would have in a state of nature. And even if properly sloped and supported by rip-rap or other stone walls the ditch would require constant care, attention and expense to maintain it. For these reasons the ditch would not materially protect plaintiff's land from overflow and such benefit, if there would be any, would be

greatly outweighed by the waste and destruction done to the property.

"And the court doth further find, that while the work of excavating said ditch was begun on or about the seventeenth day of March, 1903, no notice was given to plaintiff by defendant of defendant's purpose to make said ditch and divert the waters of the river Des Peres into it, and that plaintiff had no knowledge of such intention and purpose until on or about the 25th day of April, following, and within a reasonable time thereafter, to-wit: on or about the 6th day of May, notified defendant of his objections to the making of said ditch and of his intention to put a stop to it; that between said 25th day of April and said 6th day of May very little work was done by defendant on said ditch; that the old channel on said 25th day of April and on said 6th day of May was not filled nor interfered with. That defendant on said 6th day of May, when notified by plaintiff that said ditch would injure plaintiff's property and the work must be stopped, promised plaintiff to confer further with him at once, but failed to do so, although their office was only across the street from that of plaintiff's agents, and proceeded rapidly with the work, and shortly thereafter, by the digging of a temporary small ditch, diverted the waters from said river into said new channel at a point about 300 feet east of the west end of said new channel, on or about the 8th day of May. And so the court finds that plaintiff was not guilty of any such laches as to bar him from maintaining this action. It is therefore considered, ordered, adjudged and decreed by the court that the motion to dissolve the temporary injunction heretofore entered in this cause, be overruled, and that said temporary injunction be and is hereby made permanent.

"It is further ordered and decreed that the defendant be restrained and enjoined from constructing and maintaining, or suffering to remain open the ditch or

any artificial ditch at the place of the proposed ditch partly constructed, or at any place nearer to the south line of plaintiff's property than 145 feet, and from closing the original channel of the river Des Peres and diverting the waters therefrom into the ditch complained of, or any other ditch than one located at a distance at least 145 feet from said south line of plaintiff's land; that the defendant be required, and is hereby ordered and enjoined to at once proceed and fill up and restore the land at said ditch to its original condition, and open the channel of said river Des Peres as it originally was, or at some place at least 145 feet from said south line of plaintiff's property, said channel as so opened, to be at least the same size and capacity to carry the waters of said river Des Peres as said oroginal channel; and it is further adjudged and decreed that defendant, at its election, may establish a new ditch or channel in lieu of the old channel of, and for, the river Des Peres at a distance of (at least) 84 feet from the south line of plaintiff's said tract, provided said new channel be so constructed as to have its north bank sloped at an angle of one to one, and to have a closed sewer pipe of (at least) 36 inches in diameter therein, sufficient to contain and discharge the current of said stream in ordinary stages of its waters; and it is further adjudged and decreed that it is not within the purview and scope of this decree to forbid defendant from executing the work designed for its sewer system having an outlet into the existing new ditch, near the eastern side of defendant's tract, and connecting thereby with the bed of the river Des Peres, or with any new ditch hereafter constructed in accordance with the terms of this decree; and defendant may complete the connections of its said sewer system with the bed of said river, or any of said ditches, and may build suitable abutments or terminal works necessary to complete said sewer system and to make the connections aforesaid; and it is

further ordered and adjudged that said plaintiff have and recover against said defendant the costs herein incurred and that execution issue therefor; and the court having duly considered defendant's motion for new trial and the affidavits and counter-affidavits in support of and opposition thereto, it is ordered that said motion be overruled."

After a careful and painstaking perusal of the evidence, we have no hesitancy in saying that the facts as found by Judge McElhinney are supported by the evidence and we feel perfectly safe in adopting his findings as the established facts in the case.

1. It only remains therefore, to determine whether upon the facts as found, respondent is entitled to the relief afforded him by the circuit court. The respondent is not a riparian proprietor and therefore has no claim in the waters flowing through the channel of the river Des Peres, and so far as he is concerned, the appellant had the right to divert the waters of the river from its old channel into the new one, wholly located on its own lands. [Gould on Waters (3 Ed.), sec. 213, and cases cited in footnote 5.]

The controversy, however, is not in respect to any rights in the waters of the river as such, but is whether the appellant, by diverting the waters into the new proposed channel, will create a continuing nuisance and cause the waters of the river to cut into and encroach upon respondent's land. It is substantially alleged, both in the petition and the answer, and is also shown by the evidence, that the river Des Peres is a receptacle for filth, offal, rubbish and refuse from the homes and farms of numerous proprietors living on the stream above appellant's and respondent's lands; that the river is, in fact, an open sewer, and in dry seasons, is without sufficient flow of water to carry off the sewage and filth that is emptied into it. According to the evidence, respondent is holding his tract with the view of sub-di-

viding it into residence and business lots for which the evidence shows, it is well adapted, and that its principal value is owing to the fact that it is suitable for such purposes. Judge M'cElhinney found from the evidence that the use of the ditch as an open sewer would practically destroy the availability of all of respondent's land lying south of the street railroad track for residence or business purposes, and the question is, whether appellant, in the exercise of the right to use its own lands, may so use them as to practically destroy the beneficial use of a considerable portion of respondent's land. It seems to us to grant such right would be to permit appellant to make an unreasonable use of its lands, to ameliorate their condition at the expense of respondent. It cannot change the ordinary course of the river for this purpose. [Paddock v. Mo. Pac. Ry. Co., 60 Mo. App. l. c. 333; O'Connell v. Railway, 13 L. R. A. 397.] The benefits which would accrue to it by turning the natural course of the stream into the ditch, would certainly be in violation of respondent's rights, and according to the evidence, in every essential degree, a nuisance. [George v. Wabash Ry. Co., 40 Mo. App. 433.] Judge McElhinney also found from the evidence and from a personal view (made by the consent of the parties) of the ditch, that the waters cut into the banks on the north side and would in time, if the river channel is turned into the ditch, eventually encroach upon plaintiff's lands. According to these findings, the damages threatened respondent arise from the maintenance of such a nuisance as to make uninhabitable a considerable portion of his land (all of it south of the street railway) and also threatened the destruction of part of the realty itself. It is ancient and modern law that a person must use his own premises so as not to injure his neighbor and that the injury which results in a permanent injury to his neighbor, will be restrained by a court of equity. [St. Louis Safe Deposit Co. v. Kennett Estate, 101 Mo. App. l. c.

294, 74 S. W. 474, and cases cited; Wood on Nuisances, (3 Ed.), p. 744.] Besides, the nuisance created by the ditch in turning the waters of the river therein, would be a continuing one for which suits might be brought every day in the year. [2 Cooley on Torts (3 Ed.), p. 1301, sec. 738.] Under such circumstances, a suit in equity will lie for the purpose of preventing a multiplicity of suits at law.

2. It is contended by appellant that respondent was guilty of such laches as to bar his right to any relief. The work on the ditch was commenced about March 17, 1903, on the east end of the tract and some distance from respondent's land. The respondent had been informed of the general plan of appellant to improve its property, but was not informed that appellant contemplated the change in the course of the river Des Peres, and he did not learn that such was the purpose until within a few days before his application for an alternative writ. The evidence upon which appellant bases this contention is very meagre and unsatisfactory. The learned trial judge found against this contention and we fully agree with that finding.

3. The point is made that the evidence of both parties shows that the north bank of the ditch could be so protected as to prevent the washing and cutting of that bank, for which reason it is contended the decree is unjust in that appellant is refused the right to secure the bank and complete the ditch to improve its property according to plans. If the danger of the stream, when changed, of encroaching upon respondent's land were the only or chief injury complained of, there would be great force in appellant's contention, but it is not. The bringing in close proximity to his premises polluted and unsanitary waters and a continuing flow or deposit of pestilential filth along his south boundary line for all time, is the principal injury of which respondent complains. The maintenance of an open sewer, such as

is admitted would be created by the ditch, and the turning of the channel of the river Des Peres therein, is the real gravamen of the complaint. This nuisance could only be abated by an abandonment of the ditch. The decree is also criticised upon the ground that appellant is prohibited from digging the ditch to carry the waters of the river within less than eighty-four feet of respondent's south boundary line. It seems to us that if any one has just grounds for complaint against this provision of the decree, it is respondent, for if the ditch is dug within that distance of his south boundary, the river, along its entire south line, will be brought much nearer his premises than it is now and he will be nearer the foul, polluted waters of the stream and more liable to be effected by its pestilential odors than he would be if they were permitted to flow in their natural course. Besides, the modification was as asked for by appellant in its motion to modify the judgment.

We think the decree is eminently just and should be affirmed. It is so ordered. *Goode* and *Nortoni, JJ.,* concur.