## C. C. HARRIS v. THE NORFOLK & WESTERN RAILWAY COMPANY.

(Filed 7 December, 1910.)

1. **Water and Water Courses—Upper Riparian Owner—Material Impairment.**

    Water flowing in its natural channel is not subject to ownership, and may be used by the upper riparian owner in such reasonable quantities, taking into consideration the size and character of the stream, as not to materially or substantially impair the lower riparian owner in its legitimate use.

2. **Same—Railroads—Lower Riparian Owner—Damages.**

    A railroad company has the right, as an upper riparian owner, where its bridge crosses a natural watercourse, to the use of so much of the water as is necessary for the running of its locomotives, and a lower riparian owner cannot recover damages, on that account, in the operation of his water mill, when the use of the water by the railroad company does not materially or substantially diminish its natural flow; and upon conflicting evidence, the question is one for the jury.

APPEAL from *Lyon, J.,* at the August Term, 1910, of PERSON.

This is an action brought by plaintiff, the owner of a water mill on a running stream, to recover damages of the defendant railway company for consumption of water taken from plaintiff's pond to supply defendant's locomotives with water in the necessary operation of defendant's trains which are operated along and upon defendant's railroad track and right of way, which crosses said stream above the plaintiff's dam.

These issues were submitted:

1. Is the plaintiff the owner in fee of the land mentioned and described in the complaint; if so, when did he become the owner thereof? Answer: Yes; 7 April, 1902.

2. When did the defendant erect its water tank and pumping apparatus and begin to take and appropriate the water from the stream mentioned and described in the complaint? Answer: 27 September, 1900.

3. When did the plaintiff erect his mill and begin to take and appropriate the water from the stream mentioned and described in the complaint? Answer: January, 1903.

4. Has the defendant unlawfully and wrongfully diverted and used the water from plaintiff's mill pond as alleged in the complaint? Answer: No.

5. Did the plaintiff commence this action against the defendant within three years next ensuing from and after the time when the defendant erected its water tank and pumping station and first began the use of the water from the stream on which plaintiff's mill and pond are situated?. Answer: No.

6. Did plaintiff commence this action against the defendant within five years next ensuing from and after the time when the defendant erected its water tank and pumping station and first began the use of the water from the stream on which plaintiff's mill and pond are situated? Answer: No.

7. Is the plaintiff's alleged claim for damages barred by the statutes of limitation? Answer: ——

8. What amount of permanent damages, if any, is plaintiff entitled to recover of the defendant? Answer: ——

9. What damage has plaintiff sustained, if any, by reason of the use and diversion of water by defendant for three years next before the bringing of this action?

Upon the finding of the jury in favor of the defendant upon the fourth issue, the Court rendered judgment that the plaintiff take nothing by his writ, and that defendant go without day and recover costs. From this judgment plaintiff appealed.

The facts are stated in the opinion of the Court.

*J. F. Cothran, R. P. Reade, V. S. Bryant* and *H. A. Foushee* for plaintiff.

*Guthrie & Guthrie* for defendant.

BROWN, J. The evidence discloses that the plaintiff is the owner of a tract of land, known as Burton's old mill, situated on Flat River, upon which plaintiff has a water mill. The mill gets its flowage of water from both the north and south forks of Flat River. It is two miles by the river from the mill tract to the defendant's bridge across the south fork. The north fork and south fork come together between the mill and the bridge. Defendant has a water tank at its bridge across south fork, from which it supplies its engines with water pumped from the stream.

It is claimed by the plaintiff that the taking of the water by the defendant is unlawful and wrongful, in that it materially lowers the stream, to the injury of plaintiff's mill. This is denied by the defendant, which contends that the quantity of water taken is so small that it does not appreciably affect the flowage of the stream. Both parties introduced evidence.

The only assignment of error relied upon on argument or presented in plaintiff's brief is to the refusal of the Court to give the following instruction asked by plaintiff: "If the jury believe the evidence they will answer fourth issue Yes."

There being no exceptions, except this, the charge of the court is not sent up.

It is well settled that riparian proprietors, in the absence of specific limitation upon their rights, are entitled to have the stream which washes their lands flow as it is wont by nature, without *material* diminution.

The proprietors of lands along streams have no property in the flowing water, which is indivisible and not the subject of riparian ownership. They may use the water for any purpose to which it can be beneficially applied, but in doing so they have no right to inflict *material* or substantial injury upon those below them. *Williamson v. Canal Co.,* 78 N. C., 157; Gould on Waters, pp. 394-395; Angell on Water Comrs., pp. 96-97, 7th Ed.

What, then, gives to the lower riparian proprietor the right to complain? Not the mere taking of the water by the upper proprietor, because the water itself is not the subject of ownership as it flows in nature's course. The right of action accrues from the taking it in such unreasonable quantity as to materially, substantially injure the lower proprietor in some legitimate use he is making of the water. As Mr. Farnham expresses it: "Since the right to make use of the stream is common to all who own property upon its shores, there would *prima facie* seem to be no cause of complaint on the part of one for any use made by another unless he was actually injured by such use." 2 Waters and Water Rights, p. 1584, sec. 468.

It seems to be generally conceded that the size and character of the stream has much to do with the quantity of water which may be withdrawn from it, and that where there has been no

*appreciable, perceptible* diminution of the volume of the stream, by the upper proprietor, the lower has no cause of action. *Elliott v. Fitchburg R. R. Co.,* 57 Am. Dec., 86; *Newhall v. Ireson,* 54 Am. Dec., 790.

It is generally held that a railroad company, being a riparian proprietor, may take a reasonable amount of water from a stream for the purpose of supplying its locomotives. Mr. Farnham says: "Therefore, the water cannot be taken from the stream for use in locomotive engines so as to interfere with the rights of the riparian owner in the stream. But if the water can be taken for such purpose without interfering with other rights on the stream it may be done." 2 Waters and Water Rights, p. 1583. In England it is held that a railroad company, which crosses a river, may take a reasonable quantity of water for the supply of its engines from the river, and "the quantity will not be held unreasonable if it does no injury in wet weather and never shortens the working hours of mills lower down the stream more than a few minutes a day at any time." *Sandwich v. Great Northern R. R. Co.,* L. R., 10 Chan. Div., 27.

The English courts also hold that equity will not restrain the taking of water from a stream by a railroad company for its locomotives when the quantity taken deprives the lower riparian owner of but eleven-twelfths of one horse power. *Graham v. Northern R. Co.,* 10 Grant Ch. (U. S.), 259.

In this country it seems well settled that a railroad company crossing a stream may take water for its locomotives, provided the quantity taken does not materially, appreciably, perceptibly or sensibly (some authorities use one word and some the other) reduce the volume of water flowing down the stream. If it materially lowers the stream, it is liable to a lower proprietor who suffers a substantial injury thereby. 2 Elliott on R. R., sec. 977 and notes; *Elliott v. Fitchburg R. R.,* 10 Cush. Mass., 191; 57 Am. Dec., 86, a case in which *Chief Justice Shaw* discusses the subject with his usual thoroughness. *Fay v. Salem R. R.,* 111 Mass., 27; *Penn. R. R. v. Miller,* 112 Pa. St., 34.

In this case *Mr. Justice Paxson* closes a learned discussion of the matter with these words: "As before observed, the railroad

153—35

company may use this water by virtue of its rights as riparian owner; but such use must be such as not to *sensibly* diminish the stream to the riparian owner below. The water belongs to both, and if the former wants more than its share it must take it under its right of eminent domain and pay for it."

In the case of *Garwood v. N. Y. R. R.*, 83 N. Y., 400, the right of the defendant as riparian owner to take water for its locomotives is recognized, but the jury having found that the quantity taken was sufficient to *"materiallly* reduce or diminish the grinding power of plaintiff's mill" and "to *perceptibly* reduce the volume of water in the stream," the court held the taking wrongful and unlawful and that the defendant was liable for the damage sustained.

But a diminution of the stream which is not sensible, appreciable, perceptible, is not actionable. Gould on Waters, sec. 410, and cases cited in notes; *Wadsworth v. Tillotson,* 15 Conn., 366; *Ford v. Whitlock Ry. Co.,* 40 Mo. App., 433.

Although the charge of the court—there being no exceptions to it—is not before us, yet we can perceive from the character of the evidence and examination of witnesses on both sides that the case was properly tried and upon the true theory of liability.

It requires only a cursory perusal of the evidence to bring us to the conclusion that the court committed no error in refusing plaintiff's prayer upon the fourth issue.

The plaintiff's evidence tends to prove that at times the water taken by defendant from the South Fork materially lowers the water in the stream and inflicts substantial damage upon plaintiff by compelling him to shut down his mill.

The defendant introduced a number of witnesses who testified that plaintiff's mill was not damaged by the water taken by defendant, and that it does not perceptibly decrease the volume of the stream; that water runs over plaintiff's dam when he is grinding, and that the lowest water some witnesses have seen is a foot from the top of the dam. Defendant also proves by a civil engineer that he measured the stream and calculated its volume; that he made surveys and calculations at different times; that the flow of the stream in twenty-four hours is two hundred and ninety-three million gallons, and that the quantity taken out

during that time by the railroad company is only 26,000 gallons, or about one-fiftieth part of one per cent of the total flowage. The civil engineer further testified that "the pumping of 26,000 gallons of water out of the stream of South Fork every twenty-four hours with the total flowage of the stream would not be appreciable. It would be about three two-hundredths (3-200) of one part of one per cent. A person standing on the bank of the river could not see any difference at all. To the eye it would show no difference."

In view of the conflicting character of the evidence his Honor properly submitted the question to the jury and denied the plaintiff's prayer. As the jury found there had beeen no unlawful and wrongful taking and usage of the water by the defendant, the issues in regard to the statute of limitations and damages were properly left unanswered.

No error.