## VANDALIA COAL COMPANY *v.* LAWSON ET AL.

[No. 6,887. Filed January 29, 1909.]

(Syllabus by the Court.)

1. ACTION.—*Consolidation of Causes.—Equity.*—Equity will not grant relief because of a multiplicity of actions, where such actions may be consolidated at law. p. 232.

2. ACTION.—*Consolidation of Causes.—Inherent Powers of Courts.*—The courts, though there be no statutory sanction, may, in proper cases, consolidate actions at law. p. 232.

3. ACTION.—*Joinder of Plaintiffs.*—Persons having separate causes of action against the same person cannot join as plaintiffs. p. 232.

4. ACTION.—*Improper Joinder of Plaintiffs.—Demurrer.*—Where plaintiffs join in one action, and the complaint fails to show a joint cause of action in favor of all, it will be bad on demurrer. p. 233.

5. ACTION.—*Consolidation.—Federal Statutes.—Discretion.*—Under §921 R. S. U. S. 1878, §921 U. S. Comp. St. 1901, the consolidation of similar actions rests in the discretion of the court. p. 233.

6. PLEADING.—*Complaint.—Paragraphs.—Superfluous.—Equity.*—A paragraph of complaint in a suit to restrain several defendants from prosecuting against plaintiff, separate actions at law for damages, praying that if the court should be of the opinion that

the deprivation of a jury trial would be unfair to defendants, the court should refer the questions of fact to a jury, is superfluous, the court possessing such right in every suit in equity. p. 233.

7. EQUITY.—*Multiplicity of Actions.—Bills of Peace.*—Equity has jurisdiction to determine controversies arising out of a right claimed by one as against many, or by many as against the one. p. 234.

8. EQUITY.—*Bills of Peace.—Classes.*—Bills of peace were used for two purposes (1) to prevent a vexatious recurrence of litigation by several persons asserting the same right, and (2) to prevent the reiteration of an unsuccessful claim. p. 234.

9. EQUITY.—*Multiplicity of Actions.—Jurisdiction.*—Equity takes jurisdiction on the ground of the prevention of a multiplicity of actions, (1) where the controversy is between but two persons and the plaintiff has established his right at law, and (2) where the persons controverting plaintiff's right are so numerous as to require injunction. p. 235.

10. EQUITY.—*Multiplicity of Actions.—Jurisdiction.*—Jurisdiction of a suit is assumed on the ground of the prevention of a multiplicity of actions only where the prevented successive actions at law involve the same questions of law and a similar state of facts, and where a decree would necessarily determine the controverted question as to all of the defendants. p. 235.

11. EQUITY.—*Multiplicity of Actions.—Community of Interest.*—Community of interest in the joint parties is requisite in order to give a court of equity jurisdiction on the ground of a prevention of a multiplicity of actions; and such community of interest exists only where some right common to all joint parties is in controversy. p. 241.

12. EQUITY.—*Multiplicity of Actions.—Continuing Injuries.*—Equity has jurisdiction of a case wherein plaintiff desires to restrain continuing injuries which would result in the bringing of several actions at law therefor. p. 243.

13. EQUITY.—*Multiplicity of Actions.—Separate Causes.*—Where the same person is sued, or is liable to be sued, by several persons upon separate causes of action, equity cannot interfere. p. 246.

14. EQUITY.—*Multiplicity of Actions.—Grounds for Relief From.*—Courts of equity will not entertain jurisdiction of a suit brought on the ground of a prevention of a multiplicity of actions, except for the promotion of justice, the court being required to exercise a sound legal discretion in respect to the facts of each particular case. p. 246.

15. ACTION.—*Formalism.—Justice.*—The purpose of litigation is to establish justice; and the courts are more and more disregarding formalism in determining the justice of the litigation. p. 249.

16. CONSTITUTIONAL LAW.—*Right of Jury Trial.*—*Equity.*—Where a plaintiff has a clear right to a jury trial, the courts are not disposed to deny such right.    p. 249.

17. EQUITY.—*Jurisdiction.*—*Prevention of Costs.*—Equity will not restrain the bringing of several actions at law merely on the ground of the prevention of costs.    p. 250.

18. CONSTITUTIONAL LAW.—*Jury Trial.*—*Equity.*—The constitutional provision for a jury trial—§20, article 1—applied only to common-law cases, the verdict of a jury in equity cases being merely advisory.    p. 250.

19. CONSTITUTIONAL LAW.—*Jury Trial.*—*Value.*—The liberty of the citizen is largely safeguarded by his right to a jury trial.    p. 251.

20. EQUITY.—*Multiplicity of Actions.*—*Damages.*—Where several persons are injured because of an alleged negligent act, they cannot be deprived of the right of a jury trial by the bringing of a suit by the alleged negligent person to restrain the bringing of separate actions on the ground that the alleged negligence did not exist, that the multiplicity of actions would be ruinous, and that such injured persons were insolvent.    p. 254.

21. PLEADING.— *Complaint.*— *Master and Servant.*— *Injunction.*— *Multiplicity of Actions.*—*Damages.*—*Avoidance of Jury Trial.*— A complaint by a company to prevent its several servants who were injured by its alleged negligence from bringing separate actions for damages is not sufficient, if such suit were maintainable in any event, unless it completely negatives every possible liability to any one of the injured persons. , p. 255.

From Clay Circuit Court; *John M. Rawley,* Judge.

Suit by the Vandalia Coal Company against Alexander Lawson and others. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*Lamb, Beasley & Sawyer, Barrett & Barrett, Samuel M. McGregor,* and *Smith, Duncan, Hornbrook & Smith,* for appellant.

*George A. Knight, A. W. Knight, M. C. Hamill* and *John Hickey,* for appellees.

ROBY, J.—This is an appeal from the action of the lower court in sustaining appellees' joint demurrer to appellant's complaint. The complaint was a bill in equity against eighteen defendants, each of whom had brought an action at law against appellant to recover damages alleged to have been sustained by them respectively by reason of an explosion in

appellant's coal mine. The bill prayed that all the cases be tried as one, for the reason that such action would avoid a multiplicity of actions at law and that an injunction issue against further proceedings in the actions at law.

The first paragraph of the complaint alleges that the plaintiff is a corporation engaged in the business of mining coal in Clay and Vigo counties, Indiana; that on and prior to December 5, 1906, it owned and operated the Rosebud mine in Vigo county, in which were employed more than one hundred men. The method of reaching and working the coal, the driving of entries and the ventilation of the mine is explained, and details are given tending to show the manner in which an explosion which occurred on December 5, 1906, was caused. It is alleged that the mine was a pick mine, worked by "blasting off the solid;" that the miners placed five shots in holes drilled more than five feet into the solid coal, which were put off on December 5, 1906, at the time when the miners were quitting their work and leaving for the day; that said shots so placed in the solid coal did not, by reason of that fact, expend their force in the coal, but the powder contained in said shots was blown out into the entries and rooms, burned and generated a gas, which, when mingled with the air, became highly explosive and dangerous; that said gas was ignited and exploded by other shots put off in said mine by the miners working therein immediately after putting off said "blown out" shots; that the explosion injured a number of miners then in the employ of this plaintiff and working in said mine; that each of the several defendants claims and asserts that he was injured and burned by reason of said explosion; that each has brought an action at law against this plaintiff, seeking to recover damages for the injuries claimed to have been sustained by reason of said explosion, and that each of said defendants claims and asserts in his complaint that said explosion and injuries were the result of negligence on the part of this plaintiff, in that this plaintiff had not reg-

ularly and thoroughly sprinkled the roadways of entryways in said mine for a period of many weeks prior to said explosion, by reason of which failure and neglect of duty upon the part of this plaintiff the roadways had become so dry that the air therein was charged with dust, rendering it dangerous and liable at any time to create what is known as a "dust explosion," and that a dust explosion took place in said mine and occasioned the injuries of the several defendants in this suit, as alleged in their several complaints against this plaintiff. It is averred in this suit that the explosion was not a dust explosion, but was brought about in the manner herein set out; that the plaintiff in noway neglected its duty; that the entries did not contain an accumulation of dust, and that the injuries alleged to have been sustained were wholly the result of the wrongful and negligent act of said several miners preparing and putting off said blown out shots; that the plaintiff is in nowise liable to the defendants on account of their alleged injuries; that the claim of each is based upon the same explosion, and that plaintiff will, upon the trial of this cause, fully maintain and establish all the facts herein alleged.

Following these allegations it is averred that separate actions against plaintiff have been brought, and are now pending in the Putnam Circuit Court, by Alexander Lawson, Tom Meeley, Elza Danhour, Lewis Smith, Samuel James, David Morgan, Thomas Travis, Lewis James, Riley Rinehart, Edward Haverkamp, Josef Kowandy, Karl Haverkamp, William Yemm, Samuel Darby and William Travis, and in the Clay Circuit court by George Ambrazatis, Emery Le May, Frank Giezk and Joseph Grizikowski. Plaintiff says that it believes the expense of litigating the several actions separately will aggregate more than $30,000, and be ruinous to it; that each of said several defendants is insolvent, and plaintiff will be wholly unable to recover any costs or expenses laid out and expended by it in the defense of said causes; that the trial of all the causes would consume a

great amount of the courts' time, and subject the counties wherein the same are pending to an enormous amount of costs, and that time and costs can be saved by requiring all the matters, claims and grievances set up by all of said defendants in their respective complaints against this plaintiff to be set up, heard and determined in this suit. "Wherefore, plaintiff prays the court * * * that all said several defendants herein shall be required to appear in this court, and in this cause set forth their several and separate claims of right of action against this plaintiff, for and on account of the matters stated and alleged in their several and separate complaints in their several actions against this plaintiff, and asks that this court, sitting as a court of equity, hear and determine all said several matters in this cause." A temporary injunction restraining the defendants from taking any further proceedings in their several causes until this cause is heard and determined is asked, and upon final hearing it is prayed that an order and decree perpetually enjoining and restraining each of said defendants from further proceedings at law be issued.

The second paragraph of complaint differs from the first in that the following is inserted in the prayer thereof: "Or if the court believes that it would be unfair to said several defendants to deny them the right of trial by jury, that the court as a court of equity in the hearing and determination of this cause herein, determine the same as a court of equity, referring such matters involved herein to a jury for its advice, as the court in its judgment may deem proper and fair to all said several defendants."

The third paragraph contains the prayer: "Or if, in the opinion and judgment of the court, the several defendants herein should not be denied their right to have their separate and several actions tried by this court or jury as actions at law, then that this court proceed to hear and determine either by the court or a jury, if requested by the parties, all said several claims of said several defendants

herein in this cause of action as one consolidated action in a court of law, and that all and singular the respective rights by and between this plaintiff and all said several defendants herein be determined in this proceeding.''

Equity will not give relief because of a multiplicity of actions if the cases can be consolidated at law (*Mayor, etc., v. Dean* [1906], 124 Ga. 750, 53 S. E. 183; *Peters* v. *Provost* [1813], 1 Paine's C. C. 64; *Lapeer County* v. *Hart* 1. [1857], Harr. [Mich.] *157; 2 High, Injunctions [3d ed.], §62); hence the third paragraph, which prays that the eighteen cases pending in the Clay and Putnam Circuit Courts be consolidated and tried as one case at law, will be considered first. Statutes in this State enumerate causes of action which may or shall be joined 2. (§§279-281 Burns 1908, §§278-280 R. S. 1881), and state who are proper parties to actions (§§251-278 Burns 1908, §§251-277 R. S. 1881). These statutes do not, nor is there any other which does, authorize the courts to consolidate cases; but it was said in *Oldfather* v. *Zent* (1894), 11 Ind. App. 430, that a court, independent of any statute, has the power to consolidate causes in proper cases. That case, which is relied upon by appellant, held that where an appellant in the Appellate Court, after the term at which the judgment appealed from was rendered, files his complaint for a new trial on account of new evidence discovered after the term at which judgment was rendered, to which a demurrer was sustained, from which decision an appeal is also prosecuted to the Appellate Court, the two causes may be consolidated, and it is not authority for the proposition that nondependent causes of action, instituted in different courts by separate plaintiffs, can be 3. joined. Persons having separate causes of action against the same person cannot join as plaintiffs, *Tate* v. *Ohio, etc., R. Co.* (1858), 10 Ind. 174, 71 Am. Dec. 309; *Shoemaker* v. *Board, etc.,* (1871), 36 Ind. 175; *Heagy* v. *Black* (1883), 90 Ind. 534; *Jones* v. *Cardwell* (1884), 98

Ind. 331; *Martin* v. *Davis* (1882), 82 Ind. 38; *Elliott* v. *Pontius* (1894), 136 Ind. 641, 652.

Where the plaintiffs sue jointly, the complaint must show a joint cause of action in favor of all the plaintiffs. If it does not, it is bad on demurrer. *Doherty* v. *Holliday* (1894), 137 Ind. 282; *Brunson* v. *Henry* (1894), 140 Ind. 455; *Indianapolis Nat. Gas Co.* v. *Spaugh* (1897), 17 Ind. App. 683; *Jones* v. *Rushville Nat. Bank* (1894), 138 Ind. 87, 92. "Illustrative cases of consolidation," cited by appellant are cases decided in the United States court under §921 R. S. U. S. 1878, and are not therefore decisive herein. That statute is as follows: "When causes of a like nature or relation to the same question, are pending before a court of the United States, or of any territory, the court may make such orders and rules concerning proceedings therein as may be conformable to the usages of courts for avoiding unnecessary costs or delay in the administration of justice, and may consolidate said causes when it appears reasonable to do so." The application of the statute rests, as is seen, in the discretion of the courts. In *American Window Glass Co.* v. *Noe* (1908), 158 Fed. 777, 86 C. C. A. 133, *Denver City Tramway Co.* v. *Norton* (1905), 141 Fed. 599, 73 C. C. A. 1, and *Mutual Life Ins. Co.* v. *Hillmon* (1892), 145 U. S. 285, 12 Sup. Ct. 909, 36 L. Ed. 706, cited by appellant, the facts are far different from those presented by the case at bar. In none of them were there more than four parties united in the action, and in the case of *Mutual Life Ins. Co.* v. *Hillmon, supra,* there was a joint interest of the parties. This question will be considered at length in that portion of the opinion discussing the first paragraph of the complaint.

The second pagaraph is superfluous. The course that it suggests—that if at any point in the trial the court should be of the opinion that it would be unfair to the appellees to be deprived of a trial by jury as to any questions of fact the court should refer such ques-

tion to a jury—is open to the court, at its discretion, in every suit in equity.

We now come to the consideration of the first paragraph and the question involved—have facts been pleaded which authorize the intervention of an equity court to prevent by injunction a multiplicity of actions? The question presented is one of the most difficult and perplexing in equity jurisprudence. In view of its importance, and the fact that upon the path chosen in this case the future trend of decisions in this State is likely to depend, a review of the sources and of the later cases will be made.

This branch of equitable jurisdiction had its inception in England over a century ago in a proceeding known as a "bill of peace." The reason for allowing these bills is described by Lord Hardwicke in the case of *Lord Tenham* v. *Herbert* (1742), 2 Atk. *483: "It is certain, where a man sets up a general exclusive right, and where the persons who controvert it with him are very numerous, and he cannot, by one or two actions at law, quiet that right, he may come into this court first, which is called a bill of peace, and the court will direct an issue to determine the right, as in disputes between lords of manors and their tenants, and between tenants of one manor and another; for in these cases there would be no end of bringing actions of trespass, since each action would determine only the particular right in question between the plaintiff and defendant." These bills were of two classes: (1) To prevent the vexatious recurrence of litigation by a numerous class insisting upon the same right; (2) to prevent the same individual from reiterating an unsuccessful claim. Bispham, Prin. of Eq. (7th ed.), p. 573; Kerr, Injunctions (3d ed.), p. 586; Adams, Equity (8th ed.), 199; 1 Pomeroy, Eq. Jurisp. (3d ed.), §246; *Sharon* v. *Tucker* (1892), 144 U. S. 533, 542, 12 Sup. Ct. 720, 36 L. Ed. 532. The first class of bills might be filed either on behalf of the whole body of tenants against the lord of the

manor, or by the lord against the tenants. *How* v. *Tenants of Bromsgrove* (1681), 1 Vern. *22; *Weeks* v. *Slaker* (1693), 2 Vern. *301; *Hanson* v. *Gardiner* (1802), 7 Ves. 305; Kerr, Injunctions (3d ed.), p. 587. From these early cases the jurisdiction was extended to embrace a great number of different but analogous objects. Kerr, Injunctions (3d ed.), p. 587; 1 Spence, Eq. Jurisd., 657; 1 Pomeroy, Eq. Jurisp. (3d ed.), §247. Actions in the nature of bills of peace are allowed for the prevention of a multiplicity of actions in two classes of cases: (1) Where the controversy is between but two persons, and the plaintiff has already established his right at law; (2) where the persons controverting the right are so numerous as to render the injunction necessary. *Lord Tenham* v. *Herbert*, *supra*; *Eldridge* v. *Hill* (1816), 2 Johns. Ch. *281; *Poyer* v. *Village of DesPlaines* (1887), 123 Ill. 111, 13 N. E. 819, 5 Am. St. 494; *Chicago, etc., R. Co.* v. *City of Ottawa* (1894), 148 Ill. 397, 36 N. E. 85; *Lapeer County* v. *Hart*, *supra*; *Trustees, etc.,* v. *Nicoll* (1807), 3 Johns. *566. The same principle governs bills of peace and actions in the nature of bills of peace, "and the assumption of jurisdiction [in the latter] rests upon a similar state of facts, as in the original cases. Without at present referring to a cause of dispute and contradiction between the authorities, which will be explained in a subsequent connection, it may be stated that in all these cases, in which a court of equity grants relief in order to prevent a multiplicity of actions, the jurisdiction is assumed only where the successive actions at law, which are to be prevented by the equitable suit, involve the consideration of the same question of law and a similar state of facts, so that the one decree in the one equitable suit would necessarily have the effect of substantially settling the cause of dispute in each of the successive actions, and in respect to each individual litigant." Tiedeman, Eq. Jurisp., §513. Instances of suits in

the nature of bills of peace are: Bills to quiet title (*Lord Balh* v. *Sherwin* [1706], Prec. Ch. *261, 10 Mod. 1; Mitford [Lord Redesdale], Chancery Plead., 143, 144; Tiedeman, Eq. Jurisp., p. 600); suits by several owners of mills to restrain the letting off of water from a reservoir which they have jointly erected for the purpose of supplying their mills (*Ballou* v. *Inhabitants of Hopkinton* [1855], 4 Gray 324); suits to prevent the diversion of water from its natural course (*Reid* v. *Gifford* [1825], Hopk. Ch. *416); suits by owners of several lots of land to restrain a private nuisance which threatens a continuous and permanent injury to a passageway, in which they have a right of way in common (*Cadigan* v. *Brown* [1876], 120 Mass. 493); suits to restrain and abate other private nuisances which consist of an infringement upon some easement (*Sheldon* v. *Rockwell* [1859], 9 Wis. 158, 76 Am. Dec. 265; *Eastman* v. *Amoskeag Mfg. Co.* [1866], 47 N. H. 71, 79, 80; *Corning* v. *Troy Iron, etc., Factory* [1862], 39 Barb. 311, 327; *Webb* v. *Portland Mfg. Co.* [1838], 3 Sumner 189, Fed. Cas. No. 17,-322; *Lyon* v. *McLaughlin* [1859], 32 Vt. 423, 425, 426; *Scheetz's Appeal* [1860], 35 Pa. St. 88, 95; *Holsman* v. *Boiling Spring, etc., Co.* [1862], 14 N. J. Eq. 335; *Parker* v. *Winnipiseogee, etc., Woolen Co.* [1862], 2 Black (U. S.) 545, Fed. Cas. No. 10,752; *Carlisle* v. *Cooper* [1870], 21 N. J. Eq. 576, 579; *McRoberts* v. *Washburne* [1865], 10 Minn. 23, 30; *Letton* v. *Goodden* [1866], L. R. 2 Eq. 123, 130); suits to settle boundaries between adjoining properties (*Hill* v. *Proctor* [1877], 10 W. Va. 59, 77); suits to restrain repeated trespass (*Illinois Cent. R. Co.* v. *Garrison* [1902], 81 Miss. 257, 32 South. 996, 95 Am. St. 469; *Wheelock* v. *Noonan* [1888], 108 N. Y. 179, 15 N. E. 67, 2 Am. St. 405; *Avery* v. *New York, etc., R. Co.* [1887], 106 N. Y. 142, 12 N. E. 619; *Ladd* v. *Osborne* [1890], 79 Iowa 93, 44 N. W. 235; *Smithers* v. *Fitch* [1889], 82 Cal. 153, 22 Pac. 935; *Hanson* v. *Gardiner* [1802], 7 Ves. 305, 309, 310; *Livingston* v. *Livingston* [1817], 2 Johns. Ch. *537; *Hacker* v.

*Barton* [1876], 84 Ill. 313; *Palmer* v. *Israel* [1893], 13. Mont. 209, 33 Pac. 134; *Tantlinger* v. *Sullivan* [1890], 80 Iowa 218, 45 N. W. 765; *Slack* v. *Lawrence Tp.* [1890], [N. J. Eq.], 19 Atl. 663; *Shaffer* v. *Stull* [1891], 32 Neb. 94, 48 N. W. 882); suits to restrain continuous waste (*Hughlett* v. *Harris* [1830], 1 Del. Ch. 349, 352, 12 Am. Dec. 104); suits to restrain repeated actions of replevin (*Warren Mills* v. *New Orleans Seed Co.* [1888], 65 Miss. 391, 4 South. 298, 7 Am. St. 671); suits brought by several victims of the same fraudulent scheme (*National Park Bank* v. *Goddard* [1892], 131 N. Y. 494, 30 N. E. 566; suits brought by a railroad company against the holders of bonds in another company, such bonds having a fraudulent guaranty from the first company indorsed thereon (*Louisville, etc., R. Co.* v. *Ohio Valley, etc., Contract Co.* [1893], 57 Fed. 42); suits to enjoin the prosecution of actions to enforce a void city ordinance (*City of Newport* v. *Newport, etc., Bridge Co.* [1890], 90 Ky. 193, 13 S. W. 720, 8 L. R. A. 484; *Davis* v. *Fasig* [1891], 128 Ind. 271; *Union Pac. R. Co.* v. *Cheyenne* [1884], 113 U. S. 516, 5 Sup. Ct. 601, 28 L. Ed. 1098; *Cummings* v. *Merchants Nat. Bank* [1880], 101 U. S. 153, 156, 25 L. Ed. 903; *City of Rushville* v. *Rushville Nat. Gas Co.* [1892], 132 Ind. 575, 15 L. R. A. 321; *Third Ave. R. Co.* v. *Mayor, etc.* [1873], 54 N. Y. 159); suits to protect franchises (*President, etc.,* v. *Ryder* [1815], 1 Johns. Ch. *611; *Tyack* v. *Brumley* [1846], 1 Barb. Ch. 519, 533; *Boston, etc., R. Co.* v. *Salem, etc., R. Co.* [1854], 2 Gray 1, 27); suits by a number of judgment creditors to reach the property of the same judgment debtor (*Brinkerhoff* v. *Brown* [1822], 6 Johns. Ch. *139, *151, *156); suits to restrain trade union for sending circulars to plaintiff's customers (*Sinsheimer* v. *United Garment Workers, etc.* [1893], 5 Misc. (N. Y.) 448, 26 N. Y. Supp. 152.

The application of the doctrine that equity will interfere to prevent a multiplicity of actions has not been uniform, and there are many conflicts in the cases as to when equity

will take jurisdiction. Among the first text-writers to recognize the importance of the new doctrine was Professor Pomeroy, who discussed the many conflicting decisions and drew conclusions therefrom. These conclusions, general in nature, gave impetus to an astonishing growth in the number of cases upon the subject. In 1 Pomeroy, Eq. Jurisp. (3d ed.), §245, the cases wherein equity might interfere to prevent a multiplicity of suits are divided into four classes: (1) Where the injured party is obliged to bring a number of actions against the same wrongdoer, all growing out of the one wrongful act and involving similar questions of fact and law, e. g., nuisance, waste and continued trespass. (2) Where one party institutes or is about to institute a number of actions against another, all depending upon the same legal questions and similar issues of fact, e. g., where repeated actions of ejectment to recover the same tract of land have been brought. (3) Where a number of persons have separate and individual claims and rights of action against the same party, but all arise from some common cause, are governed by the same legal rule, and involve similar facts, and the whole matter might be settled in a single suit brought by all these persons uniting as coplaintiffs, e. g., the case of several owners of distinct parcels of land suing to enjoin the collection of an illegal tax which has been laid thereon. (4) Where one party claims some common right against a number of persons, the establishment of which would regularly require a separate action brought by him against each of these persons, or brought by each of them against him, he may procure the whole to be determined in one suit brought by himself against all the adverse claimants as codefendants. The case at bar comes within the third class so laid down. In 1 Pomeroy, Eq. Jurisp. (3d ed.), §§268, 269, under "Conclusions as to the third and fourth classes," the author states that in technical "bills of peace," in order that equity may interfere, there must exist among the individuals com-

posing the numerous body, or between them and their single adversary "a common right, a community of interest in the subject-matter of the controversy, or a common title from which all their separate claims and all the questions at issue arise," but that the jurisdiction has long been extended, and that in cases "analogous to," or "within the principles of," "bills of peace" equity will intervene although there is no common title or community of right or of interest in the subject-matter, as well as where there is merely a community of interest among them in the question of law and fact involved or in the kind and form of relief demanded. These conclusions of Pomeroy are reviewed and controverted in the much-famed case of *Tribette* v. *Illinois Cent. R. Co.* (1892), 70 Miss. 182, 12 South. 32, 35 Am. St. 642, 19 L. R. A. 660. That was a case wherein each of several property owners had brought his separate action against a railroad company for damages to his separate property, caused by a fire set by sparks from an engine of the defendant company. While their actions were pending the defendant exhibited a bill against the several plaintiffs, averring that no liability to it arose by reason of the fire, which was caused, not from any negligence or wrong of it or its servants, but from the fault of others, for which it was not responsible. It was held that equity would not interfere, as the plaintiffs had no community of interest or tie or connection, except that each had suffered from the same alleged negligence upon which his action was based. We quote from that case as follows: "But we affirm, after careful examination and full consideration, that Pomeroy is not sustained in his 'conclusions' stated in §269 [*supra*] of his most valuable treatise, and that the cases he cited do not maintain the proposition that mere community of interest 'in the question of law and fact involved in the general controversy, or in the kind and form of relief demanded and obtained by or against each individual member of the numerous body,' is ground for the

interposition of chancery to settle, in one suit, the several controversies. There is no such doctrine in the books, and the zeal of the learned and usually accurate writer mentioned, to maintain a theory, has betrayed him into error on this subject. * * * The cases established this proposition, viz.: Where each of several may proceed or be proceeded against in equity, their joinder as plaintiffs or defendants in one suit is not objectionable; but this is a very different question from that, whether, merely because many actions of law arise out of the same transaction or occurrence, and depend upon the same matters of fact and law, all may proceed or be proceeded against jointly in one suit in chancery; and it is believed that it never has been so held, and never will be, in cases like those here involved. * * * There is danger that by frequent repetitions and piling up assertions—judges citing and quoting text-books, and text-writers citing the cases thus referring to them—a false doctrine may acquire strength enough to dispute with the true; but we do not believe that any accumulation of dogmatic assertion and citations and quotations can ever establish the proposition that a defendant sued for damages by a dozen different plaintiffs, who have no community of interest or tie or connection between them except that each suffered by the same act, may bring them all before a court of chancery in one suit, and deny them the right to prosecute their actions separately at law as begun by them. * * * The wrecking of a railroad train might give rise to a hundred actions for damages, instituted in a dozen different counties, * * * in some of which executors or administrators, or parent and children might sue for the death of a passenger, and, in others, claims would be for divers injuries. If Pomeroy's test be maintained, all of these numerous plaintiffs, having a community of interest in the questions of fact and law, claiming because of the same occurrence, depending on the very same evidence, and seeking the same kind of relief (damages), could be brought

before a chancery court in one suit to avoid multiplicity
of suits! But we forbear. Surely the learned author would
shrink from the contemplation of such a spectacle; but his
doctrine leads to it, and makes it possible.'' The opinion
in that case has been reprinted and quoted from many times
in the cases and in text-books. See particularly 1 Beach,
Injunctions, §543. The controversy between said case and
Pomeroy was continued in the last edition of the latter by
the addition of two new paragraphs (the only new para-
graps in the entire edition). See 1 Pomeroy, Eq. Jurisp.
(3d ed.), §§251½, 251¾, and the preface. But while this
edition objects to the reasoning used in the case, it acknowl-
edges that the decision of the court was correct (1 Pomeroy,
Eq. Jurisp. [3d ed.], p. 429), and this, rather than an ab-
stract generality, is more important in assisting us to form
a conclusion in the present case.

We consider that a community of interest in the subject-
matter is necessary in order for equity to take jurisdiction.
*Hale* v. *Allinson* (1903), 188 U. S. 56, 47 L. Ed. 380,
11. 23 Sup. Ct. 244; *Tift* v. *Southern R. Co.* (1903),
123 Fed. 789; *Edward Hines Lumber Co.* v. *Scott*
(1902), 101 Ill. App. 523, 527; *People's Nat. Bank* v. *Saville*
(1905), 25 App., D. C., 139; *Bryan* v. *Bryan* (1901), 61
N. J. Eq. 45, 48 Atl. 341; *Burnett* v. *Lester* (1870), 53 Ill.
325; *Saxton* v. *Davis* (1811), 18 Ves. *72; *City of Albert
Lea* v. *Nielsen* (1901), 83 Minn. 246, 86 N. W. 83; 1 High,
Injunction (3d ed.), §65; Story, Eq. Pl. (10th ed.), §§271,
277, 538. The distinction between what does and what does
not constitute a community of interest is well illustrated by
the following quotation from Bliss on Code Pleading, which
is also quoted in *Tribette* v. *Illinois Cent. R. Co., supra:*
''Two or more owners of mills propelled by water are in-
terested in preventing an obstruction above that shall inter-
fere with the downflow of the water, and may unite to re-
strain it or abate it as a nuisance; *but they cannot hence*

*unite in an action for damages, for, as to the injury suffered, there is no community of interest.''* (Our italics.) Bliss, Code Pl. (3d ed.), §76. The proposition is stated as follows in the excellently-considered case of *Madison* v. *Ducktown, etc., Iron Co.* (1904), 113 Tenn. 331, 83 S. W. 658: "When several persons, acting independently, combine to produce a nuisance, such persons may be joined as defendants in a suit for injunctive relief. 14 Ency. Pl. and Pr., 1141 (citing *Thorpe* v. *Brumfitt* [1873], L. R. 8 Ch. 650; *Woodyear* v. *Schaefer* [1881], 57 Md. 1, 40 Am. Rep. 419; *People* v. *Gold Run, etc., Min. Co.* [1884], 66 Cal. 138, 4 Pac. 1152, 56 Am. Rep. 80; *Kingsbury* v. *Flowers* [1880], 65 Ala. 479, 39 Am. Rep. 14). But there can be joinder neither of complainants nor of defendants for the purpose of recovering damages for the injuries caused by such nuisance. 14 Ency. Pl. and Pr., 1139 (citing on the first point *Demarest* v. *Hardham* [1881], 34 N. J. Eq. 469; *Morris, etc., R. Co.* v. *Prudden* [1869], 20 N. J. Eq. 530; *Rowbotham* v. *Jones* [1890], 47 N. J. Eq. 337, 20 Atl. 731, 19 L. R. A. 663; *Fogg* v. *Nevada, etc., R. Co.* [1890], 20 Nev. 429, 23 Pac. 840), 1141 (citing on the second point *Sadler* v. *Great Western R. Co.* [1895], 2 Q. B. 688)." The "right" controverted must be of a peculiar character. It must be a common right, enjoyed in common by several persons, and in such a manner that the invasion of the right of one is really an invasion of the rights of all, such as a right of fishery, for instance. Adams, Equity (8th ed.), *199, *200; · 2 Story, Eq. Jurisp. (13th ed.), §§854-856. This statement distinguishes the leading case of *Mayor, etc.,* v. *Pilkington* (1737), 1 Atk. *282, wherein an injunction was granted, and which appellant claims is controlling here. There the mayor of York, claiming on the part of the corporation an exclusive right of fishery in the river Ouse, was allowed to bring a bill in equity to settle such right against five lords of manors who claimed a common right of fishery therein. See, also, *Kellogg* v. *King* (1896), 114 Cal.

378, 46 Pac. 166, 55 Am. St. 74, where one who had, under a lease, the exclusive right of hunting upon a game preserve, and who had no adequate remedy at law against those who invaded the premises, and shot and drove away the game, without bringing a separate action against each individual defendant, was entitled to an injunction, upon the ground that it would avoid a multiplicity of actions. These cases are further distinguished from the one at bar by the fact that the suits therein were to restrain continuing injuries, while the injuries in the present case are fixed and determined. Where there is an injury, continuing in its nature, which results in the bringing of numerous actions against a person, equity has often intervened to prevent a multiplicity of actions. *Illinois Cent. R. Co.* v. *Garrison* (1902), 81 Miss. 257, 32 South. 996, 95 Am. St. 469 (which is expressly distinguished from the case of *Tribette* v. *Illinois Cent. R. Co.*, *supra*, because of the continuing nature of the injury) ; *Wheelock* v. *Noonan* (1888), 108 N. Y. 179, 15 N. E. 67, 2 Am. St. 405 ; *Warren Mills* v. *New Orleans Seed Co.* (1888), 65 Miss. 391, 4 South. 298, 7 Am. St. 671 ; *Olivella* v. *New York, etc., R. Co.* (1899), 31 Misc. (N. Y.) 203, 64 N. Y. Supp. 1086 ; *Boston, etc., Railroad* v. *Sullivan* (1900), 177 Mass. 230, 58 N. E. 689, 83 Am. St. 275 ; *Mendelson* v. *McCabe* (1904), 144 Cal. 230, 77 Pac. 915, 103 Am. St. 78 ; *Palmer* v. *Crisle* (1902), 92 Mo. App. 510 ; *Lynch* v. *Egan* (1903), 67 Neb. 541, 93 N. W. 775 ; *Stovall* v. *McCutchen* (1900), 107 Ky. 577, 54 S. W. 969, 92 Am. St. 373, 47 L. R. A. 287 ; *Desberger* v. *University Heights Realty, etc., Co.* (1907), 126 Mo. App. 206, 102 S. W. 1060 ; *Coatsworth* v. *Lehigh Valley R. Co.* (1897), 24 Hun, App. Div., 270, 48 N. Y. Supp. 511 ; *Coville* v. *Gilman* (1878), 13 W. Va. 314. Such strict community of interest in the subject-matter in these cases is not required, and they must be taken as stating a qualification to the general rule that a community of interest in the subject-matter is necessary or harmonized therewith by con-

sidering that the continuing nature of the injury as against them all constitutes such community of interest. See quotation from Bliss, Code Pl., *supra*.

The case of *Sheffield Water-Works Co.* v. *Yeomans* (1866), L. R. 2 Ch. 8, a more modern English case also cited and relied upon by appellant, is likewise not an analogous case. There the reservoir of the Sheffield Water-Works Company had burst and occasioned an inundation, by which the property of 7,315 persons had been injured. Under an act of parliament, passed to meet the needs of the case, certificates for damages were to be issued to the property holders, which entitled the holder, after compliance with certain formalities, to a claim against the company in the nature of a judgment. A difference of opinion afterwards arose between the commissioners as to whether their powers had not expired; and a large number (1,500) of certificates were delivered by some of the commissioners to Yeomans, who was the town clerk, for distribution. A bill was then filed against Yeomans and five of the persons named in the certificates on behalf of themselves and of all others; and a demurrer to this bill was overruled. "It seems to me," said Lord Chancellor Chelmsford, "to be a very fit case, by analogy, at least, to a bill of peace, for a court of equity to interpose and prevent the unnecessary expense and litigation which would be thus occasioned, and to decide once for all the validity or invalidity of the certificates upon which the claims of all the parties depend." The question involved was the validity of the certificates, not of the injured persons' demands. In the validity of the certificates they had a community of interest, and the injunction was properly granted.

All the text-books and encyclopedias have found it difficult to state a rule covering the law with regard to a multiplicity of actions. In 16 Cyc., 65, title, Equity, it is said: "The nature of the relationship which must subsist between the claims of the numerous persons cannot be stated with

precision. It is clear that such claims must not be entirely distinct, unconnected, and independent. On the other hand it is often said that the individuals composing a numerous body must claim in privity, or at least claim a common right, in order to found the jurisdiction. Nevertheless bills have been sustained where there was no connection among the different claims other than that they all depended upon the same question of fact or law arising out of the same transaction. Elsewhere it is held that such connection is insufficient. While all attempts to harmonize the authorities have failed, the rule which most nearly approaches that result is that the bill must relate to matters of the same nature and having a connection with each other, and in which all the parties are more or less concerned, although their rights in respect to the general subject of the case may be distinct.'' The New York case (*Brinkerhoff* v. *Brown* [1822], 6 Johns. Ch. *139) which the writer of the article, a New York professor, cites to support his last statement was decided long before the numerous cases were decided which caused the controversy to assume a serious aspect. The generalization of the texts and the conflict of the cases have helped lead the law into confusion, and the supreme court of Missouri, in *Merchants Exchange, etc.,* v. *Knott* (1908), 212 Mo. 616, 111 S. W. 565, begins the consideration of a case involving these questions with the following language: ''We are somewhat constrained by the fact that some of the questions made trench on vexed grounds, with boundaries obscurely traced. The law thereupon may be said to be in a condition of flux on some phases, and the last judicial word has not yet been spoken, possibly. So that, a court holding them in judgment in these later days may with modest reverence heed the prudent lines of Cardinal Newman's noble hymn:

''Lead, kindly light, amid the encircling gloom,
Lead thou me on; * * *
I do not ask to see the distant scene;
One step enough for me.''

Examination has been made of all the cases upon the subject, and we conclude that there is little wonder that no general rules can be authoritatively stated. From the great mass of authority which has accumulated, few general propositions have crystallized. A citation or discussion of these scores of cases would unnecessarily extend this opinion, which is perhaps already needlessly long. Some of them show that the word "multiplicity" has often been confused with the word "multitude." Because one person is being sued by various persons on independent causes of action is no cause for interference by equity. *Eldridge* v. *Hill* (1816), 2 Johns. Ch. *281; *Murphy* v. *Mayor, etc.*(1880), 6 Houst.(Del.) 108, 22 Am. St. 345; *Dodd* v. *City of Hartford* (1856), 25 Conn. 232; *Illinois Steel Co.* v. *Schroeder* (1907), 133 Wis. 561, 113 N. W. 51, 14 L. R. A. (N. S.) 239. A large number of plaintiffs merely (*Lapeer County* v. *Hart* [1857], Harr. [Mich.] *157), or a large number of suits merely (*Scott* v. *McFarland* [1895], 70 Fed. 280), will not cause an intervention. Equity has often interfered to restrain the collection of an illegal tax. These cases are collected in note to *Odlin* v. *Woodruff* (1893), 22 L. R. A. 699, 703. Distinguishing facts have prevented interference in some of the tax cases. See *Indiana Mfg. Co.* v. *Koehne* (1903), 188 U. S. 681, 47 L. Ed. 651, 23 Sup. Ct. 452. They have likewise interfered in cases to prevent the enforcement of illegal ordinances. *Wilkie* v. *City of Chicago* (1900), 188 Ill. 444, 58 N. E. 1004, 80 Am. St. 182; *Mills* v. *City of Chicago* (1904), 127 Fed. 731; *City of Cleveland* v. *Cleveland City R. Co.* (1904), 194 U. S. 517, 24 Sup. Ct. 756, 48 L. Ed. 1102; *Chicago City R. Co.* v. *City of Chicago* (1905), 142 Fed. 844.

From the maze of conflicting cases an attempt is made herein to evolve some rule or general principle. Whether this is correctly done, or whether it is done at all, for the purposes of the decision of this case is not highly material. The courts, struggling on along the

boundary line between the cases in which equity should intervene and those in which it should not intervene to prevent a multiplicity of suits, have declared that no hard and fast rule relating thereto can be laid down. *Wyman* v. *Bowman* (1904), 127 Fed. 257, 62 C. C. A. 189. It is easy to say that the jurisdiction "rests upon the prevention of a multiplicity of suits, but to say whether a particular case comes within the principle is sometimes a much more difficult task. Each case, if not brought directly within the principle of some preceding case, must, as we think, be decided upon its own merits and upon a survey of the real and substantial convenience of all parties, the adequacy of the legal remedy, the situations of the different parties, the points to be contested and the result which would follow if jurisdiction should be assumed or denied; these various matters being factors to be taken into consideration upon the question of equitable jurisdiction on this ground, and whether within reasonable and fair grounds the suit is calculated to be in truth one which will practically prevent a multiplicity of litigation and will be an actual convenience to all parties, and will not unreasonably overlook or obstruct the material interests of any. The single fact that a multiplicity of suits may be prevented by this assumption of jurisdiction is not in all cases enough to sustain it." *Hale* v. *Allinson* (1903), 188 U. S. 56, 77, 47 L. Ed. 380, 23 Sup. Ct. 244. The doctrine that equity will interfere to prevent a multiplicity of actions rests on the inadequacy of the legal remedy. *Barrera* v. *Frost* (1903), 33 Tex. Civ. App. 580, 77 S. W. 637. The prevention of such multiplicity is a persuasive, but not a conclusive, argument in favor of the jurisdiction. *Ozark-Bell Tel. Co.* v. *City of Springfield* (1905), 140 Fed. 666. Whether a court will take jurisdiction depends upon the circumstances of each case. *Adams* v. *Oberndorf* (1905), 121 Ill. App. 497; *Milwaukee Electric R., etc., Co.* v. *Bradley* (1901), 108 Wis. 467, 487, 84 N. W. 870; *City of Chicago* v. *Collins* (1898), 175 Ill. 445, 453,

51 N. E. 907, 49 L. R. A. 408, 67 Am. St. 224. The rule applicable to all injunctions is that "no injunction will be granted whenever it will operate oppressively, or inequitably, or contrary to the real justice of the case." 2 Story, Eq. Jurisp. (13th ed.), §959a. See *Clack* v. *White* (1852), 2 Swan (Tenn.) 540, 545. "If, on thus contrasting consequences, it appears doubtful whether greater injury will not be done by granting than by withholding the injunction, it is the duty of the court to decline to interfere." *Madison* v. *Ducktown, etc., Iron Co.* (1904), 113 Tenn. 331, 361, 83 S. W. 658. And see *Hilton* v. *Earl of Granville* (1841), 1 Cr. & Ph. *283. Whether a court of equity should intervene, and investigate and enforce primary legal rights which have no color of equity, is very largely within the discretion of the court, a discretion which must be exercised largely according to the peculiar circumstances of each particular case (*Bellingham* v. *Palmer* [1895], 54 N. J. Eq. 136, 139, 33 Atl. 199; *Daab* v. *New York, etc., R. Co.* [1905], 70 N. J. Eq. 489, 62 Atl. 449) ; and in cases of questions triable by jury the appeal is to the grace of the court. *Tudor Boiler Mfg. Co.* v. *I. & E. Greenwald Co.* (1904), 5 Ohio C. C. (N. S.) 37. We do not agree with the cases which hold that the exercise of the power to issue an injunction to prevent a multiplicity of actions is to be absolutely controlled by the discretion or caprice of the various courts. Such arbitrary power would be as unreasonable as that possessed by a monarch. The discretion used should be the result of legal reasoning and consideration wherein all the facts and circumstances are considered with regard to whether the assumption of jurisdiction by equity would "make for justice" (*Boonville Nat. Bank* v. *Blakey* [1906], 166 Ind. 427), or, as even Pomeroy says (1 Pomeroy, Eq. Jurisp. [3d ed.], §251½), will "result in a simplification or consolidation of the issues."

It is held that equity will take jurisdiction on the ground of preventing a multiplicity of actions only where it ap-

pears from the allegations of the bill that the rights of all— the parties involved in the subject-matter of the controversy can be as fully determined in such single suit as they could be in the several actions. *Eureka, etc., R. Co.* v. *California, etc., R. Co.* (1901), 109 Fed. 509, 48 C. C. A. 517. In the case of *Inhabitants, etc.,* v. *Watters* (1901), 61 N. J. Eq. 284, 48 Atl. 316, Vice-Chancellor Pitney, after examining a large number of cases, formulates the following rule or principle to guide the court in determining whether to take jurisdiction of cases because of complexity of the issues: "The test is, are the issues so numerous, and so distinct, and the evidence to sustain them so variant, technical and voluminous, that a jury is incompetent intelligently to deal with them and come to a just conclusion?" *Daab* v. *New York, etc., R. Co., supra.*

The modern, and we believe laudable, tendency of courts is to abandon the old and technical forms, to shorten litigation, to get at the heart of a case and decide it without delay, to save time and expense. Many of the later cases show that the number of cases in which equity will assume jurisdiction is increasing, but in allowing this condensation of litigation courts must look well to the facts and see that a consolidation will not confuse the issues, will not bring so many questions or varied interests into a case that they cannot be as well decided as if the cases were tried separately, will not work a practical denial of that grand constitutional guaranty—trial by jury. Every man has the right to try his case with its issues clear and well defined. If a consolidation can be had without interfering with this right, it should be granted in a proper case; if it cannot be so had, it should be denied. Should the court take jurisdiction of this case in equity and should the issues be tried out therein, it would be necessary to submit the questions of fact—the amount of damage done the several injured persons, etc.— to a jury. The possibility that the jury might confuse the

evidence relating to so many separate parties is strong. Great difficulty might arise in adjusting the rights of all parties in one decree, and justice would more likely be obtained by separate trials. *Cadigan* v. *Brown* (1876), 120 Mass. 493. A possibility that more wrong will be done than prevented by an injunction prayed for will prevent the granting of it. *Fesler* v. *Brayton* (1896), 145 Ind. 71, 32 L. R. A. 578. It is said in *Hale* v. *Allinson* (1903), 188 U. S. 56, 80, 47 L. Ed. 380, 23 Sup. Ct. 244: "Such a bill as is now before the court is certain to be the beginning of a long and expensive litigation. The hearings are sure to be protracted. Several, perhaps many, counsel will no doubt be concerned, whose convenience must be consulted. The testimony will soon grow to be voluminous. * * * The costs of witnesses will not in any degree be diminished, and, if some docket costs may be escaped, this is probably the only pecuniary advantage to be enjoyed by this one cumbersome bill over separate actions at law." The saving of expense alone is not a sufficient reason for interference by equity. *Murphy* v. *Mayor, etc.* (1880), 6 Houst. (Del.) 108; *Sheldon* v. *Centre School District* (1856), 25 Conn. 224; *City of Albert Lea* v. *Nielsen* (1900), 80 Minn. 101, 82 N. W. 1104, 1107, 81 Am. St. 242. [In N. W. entitled, *City of Albert Lea* v. *Davis*.]

Appellees herein urge that equity cannot interfere because such a course would result in depriving them of a trial by jury. Article I, §20, of the Constitution of the State of Indiana, which provides that "in all civil cases, the right of trial by jury shall remain inviolate," applies only to actions triable by jury at the common law. Should equity assume jurisdiction and the court submit the issues of fact to a jury, the verdict in such a case is not binding upon the court. *Rariden* v. *Rariden* (1891), 129 Ind. 288; *Koons* v. *Blanton* (1891), 129 Ind. 383; *Brundage* v. *Deschler* (1891), 131 Ind. 174; *Garard* v. *Garard*

(1893), 135 Ind. 15; *Hornbrook* v. *Powell* (1896), 146 Ind. 39; *Seisler* v. *Smith* (1898), 150 Ind. 88.

If the case is properly one of equitable cognizance, the defendants cannot resist the proceedings on the single ground that it deprives them of a trial by jury. But such fact will be considered in deciding whether the taking of jurisdiction ·by an equity court will make for justice. In *Boonville Nat. Bank* v. *Blakey* (1906), 166 Ind. 427, it is said that "it involves, if carried to its logical result, the denial of a jury trial;" and, while jurisdiction was not refused on that ground alone, it seems to have been given weight.

"The fact, if it be a fact, as suggested in the vigorous note to 2 Pomeroy, Eq. Jurisp. (3d ed.), §914, that in such cases 'justice could be better administered, and the rights of both litigants protected far better by a trained judge than by leaving everything to the rough and ready justice of an ordinary jury,' would furnish no warrant for opening the doors of equity in cases where they are closed by the constitutional guaranty as to the right of trial by jury; otherwise there would be but very little basis for any limitation to the displacement of such right by equity. The quoted language involves an attack upon the constitutional system rather than upon the practice under it. However, we are not ready to admit that the time-honored idea is wrong, that the rights of parties as to matters of fact can best be intrusted, for protection, to the judgment of a jury, guided as to the law by a careful and intelligent judge." *Johnson* v. *Swanke* (1906), 128 Wis. 68, 107 N. W. 481, 5 L. R. A. (N. S.) 1048. Given countenance by such eminent authority as Professor Pomeroy, it is not strange that courts have been found willing to carry the doctrine of injunctive relief to prevent a multiplicity of actions to such an extent as seriously to impair the right of trial by jury, and it is certain that other courts, in

time, with the added warrant of precedent given by the first cases, will be found willing still further to undermine that right.

The case of *Southern Steel Co.* v. *Hopkins* (1908), (Ala.), 47 South. 274, illustrates the possible extreme which may be attained. The facts in that case were that 110 persons were killed in an explosion in a coal mine, and that the administrators of said "unfortunate persons" brought several actions against the company owning the mine, insisting that its negligence was the proximate cause of the accident. The company by its bill, in effect, says: "If these actions are allowed to proceed at law, it will be ruined in costs and expenses, though it be successful in every suit; that the plaintiffs are all insolvent, and thus could not pay the taxed costs against them, should they be unsuccessful; that the suits are pending in different courts, and will be called for trial in different courts at the same time; that by reason of this, and the necessity of having the same witnesses in each trial, it is impossible for the defendants to present a proper defense to these multitudes of claims. The appellant says, moreover, that it has one and the same and a perfect defense or defenses to all these suits, which will be put forward in each case, and which will be determinative of all alike; and on this ground it is insisted that this is a plain case for the application of the jurisdiction of a court of equity to avoid a multiplicity of suits. [After stating which the writer of the opinion says:] We agree with this contention on principle." The principle stated in the preceding portion of the opinion is "that there is no plain, adequate, complete and practical remedy for appellant's protection in the courts of law." The effect upon the appellees, each of whom was presumably seeking to recover damages for the benefit of those of kin and dependent upon one of the "unfortunate persons" killed, was not considered in any way. It was enough for the court to know that it could, by declaring the case one of equitable jurisdiction, render the constitutional

guaranty of trial by jury inapplicable. In fine contrast to this case in this aspect are the thoughtful expressions contained in *Boonville Nat. Bank* v. *Blakey, supra.* The protection of the coal mining company from a "multitude" of suits was apparently the sole concern in *Southern Steel Co.* v. *Hopkins, supra;* the protection of the owner, not from vexatious actions, nor actions relative to the same property, but against single actions, brought by competent parties in competent courts, where the issues, separate and distinct, could be determined in accordance with constitutional and regular methods, and where it, equally with the administrator of the dead employe, could have a fair trial. The right of a single employe, separately injured, to have his case thus tried has not yet been denied. But by the case under review it is substantially held that the cost of an explosion which kills 110 men must not be made greater than it would be had only one man been killed. The writer of the opinion was not content to rest his conclusion upon "principle." It is there said: "We now examine the precedents to show that the great legal minds who have administered the principles of equity in the past do not disagree with this conclusion." Those who care to determine how careful an examination was made may form some conclusion by reference to the citations heretofore made. A single illustration will be given. The writer of the opinion in *Southern Steel Co.* v. *Hopkins, supra,* says: "The case however of *Tribette* v. *Illinois Cent. R. Co.* [1892], 70 Miss. 182, 12 South. 32, 19 L. R. A. 660, 35 Am. St. 642, is directly opposed to our views. That case we consider as overruled by the subsequent one in the same court of *Crawford* v. *Mobile, etc., R. Co.* [1903], 83 Miss. 708, 36 South. 82, 102 Am. St. 476, in which the court expressly approves the view repudiated in the case of *Tribette* v. *Illinois Cent. R. Co., supra.* It is said in the case of *Crawford* v. *Mobile, etc., R. Co., supra:* 'We think the doctrine announced by Pomeroy is sound and clearly established by the best consid-

ered modern cases.' After this repudiation of the case of *Tribette* v. *Illinois* Cent. *R. Co.,* *supra,* by the supreme court of Mississippi, we will not follow the reasoning of the opinion in that case to point out its deflection from and opposition, in our opinion, to the ancient as well as modern view of the extent of the jurisdiction of courts of equity in reference to multiplicity of suits. That jurisdiction is too well established and too beneficent, when wisely exercised, to be any longer called in question.''

The case of *Crawford* v. *Mobile, etc., R. Co., supra,* was one in which a number of persons who had executed notes to induce a railroad to build its line through their town joined in an action for the cancelation and surrender of said notes, on the ground that they were procured by fraud. No reference is made in that opinion to the case of *Tribette* v. *Illinois Cent. R. Co., supra,* which consists of two paragraphs. The facts involved were wholly different. The doctrine declared by Pomeroy as applicable to the case then before the Mississippi court is undoubtedly sound. The method by which the unanswerable logic of the case of *Tribette* v. *Illinois Cent. R. Co., supra,* was avoided in *Southern Steel Co.* v. *Hopkins, supra,* is disingenuous, to say the least, and this especially in view of the fact that *Illinois Cent. R. Co.* v. *Garrison* (1902), 81 Miss. 257, 32 South. 996, 95 Am. St. 469, which is cited in *Crawford* v. *Mobile, etc., R. Co., supra,* and must therefore have been called to the attention of the Alabama court, not only approves *Tribette* v. *Illinois Cent. R. Co., supra,* but differentiates it from the case then being considered, upon grounds applicable to the facts involved in the case of *Crawford* v. *Mobile, etc., R. Co., supra.*

Here, then, is authority to warrant an injunction against two or more persons who claim to have been injured at the same time by the negligence of a corporation. If it 20. is sufficient to warrant such action that the defendants were working in the mine in aid of a single en-

terprise when the asserted right of action accrued, it would be equally competent to enjoin the holders of a hundred promissory notes executed in carrying on a single enterprise from bringing separate actions thereon; and if this is to become in very truth a government by injunction, there is no good reason why all the citizens of the township, county or State may not be enjoined from putting the petitioning corporation to expense by any kind of separate actions connected with its business. It is manifest from the authorities reviewed that judicial precedents, generally speaking, cannot be relied upon to prevent such abuse of power as is sanctioned in *Southern Steel Co.* v. *Hopkins, supra.* Limitations upon injunction to prevent a multitude of actions, under the pretext of a multiplicity of actions, can certainly be fixed by statutes, the enactment of which ought not to be long deferred. In Indiana the case of *Boonville Nat. Bank* v. *Blakey, supra,* in the principles which it enunciates, furnishes a present bar to such assumption of power as the appellant invokes.

It ought to be unnecessary to say that the inability of appellees to pay judgments or costs which might be rendered against them cannot be considered as a reason for invoking equity jurisdiction. The law does not limit a man's privilege to establish his rights by his financial standing, and justice in due and orderly course is as much the right of the poor as it is of the rich.

The averments of the complaint fail to show equity even upon appellant's hypothesis. It is there said that the negligence set up by appellees is based on the false theory that the explosion was not a dust explosion, as alleged by the appellees, but was a gas explosion, caused by appellees' negligence; but it is not made to appear in the complaint that appellant is not liable to any of its employes upon the true facts. The allegations that it is in no sense liable, that the explosion was the result of the negligent acts of the miners who exploded the charges

that generated the explosive gas, and that it had no opportunity of observing or knowing of the unlawful acts of said miners, are the averments of conclusions. *Chicago, etc., R. Co.* v. *Burger* (1890), 124 Ind. 275; *Indiana, etc., R. Co.* v. *Barnhart* (1888), 115 Ind. 399; *Boonville Nat. Bank* v. *Blakey, supra.* Nothing short of a specific statement of facts, establishing, without aid of presumptions, the absolute nonliability of appellant to any of the appellees, in any event, can be accepted as a basis upon which to invoke equitable action. To hold otherwise would be to interfere with the operation of the statutes providing for the amendment of pleadings, and to deprive the appellees of an opportunity to avail themselves of many statutory provisions to which they are in their original actions entitled, a few of which are: That before the complaint is answered it may be amended as a matter of course, after that time on leave of court (§403 Burns 1908, §394 R. S. 1881), which is freely given; that the pleadings may be amended to conform to proof (§400 Burns 1908, §391 R. S. 1881); and that a plaintiff who has begun his action upon a wrong theory may always dismiss before final judgment and begin over again upon the correct one (*Elkhart Car Co.* v. *Ellis* [1893], 135 Ind. 205).

Judgment affirmed.